## Von Gerbig v. Marshall

134

*Dallett Hemphill*, for plaintiffs.

*Gawthrop & Greenwood* and *William C. Massinger*, for defendants.

KURTZ, J., September 16, 1964.—At the hearing of this cause, defendants Lamb, Acker, Windolph and Shriver not having filed an answer, plaintiffs discontinued the action as to them but pursued it as to defendants James M. Marshall and Mary S. Marshall, his wife. As between plaintiffs and the Marshalls, the pleadings consist of an amended complaint, an answer thereto with new matter and plaintiffs' reply to the new matter.

Plaintiffs aver that they reside in Haverford, in Delaware County, and that by a deed of May 20, 1959, they acquired title to a tract of land containing approximately 22 acres, situate in West Pikeland Township, in this county; that defendants Marshall by a deed of the same date acquired title to an adjoining tract in West Pikeland Township containing 9.684 acres; that both of said properties are located within an "A District" so designated by the provisions of the zoning ordinance of said township; that in the fall of 1961, plaintiffs for the first time observed the

partial construction of a barn or stable upon defendants' property which was located within 10 feet of the common boundary line between their properties, in violation of the provisions of section 43 of said ordinance, which provides that in an "A District" there shall be two side yards having an aggregate width of 80 feet, neither side being less than 35 feet in width, and a rear yard of at least 50 feet; that plaintiffs contacted the township zoning officer upon noticing the construction aforesaid and that he failed to furnish plaintiffs with information regarding the status of a building permit pertaining to the structure; that plaintiffs had no prior notice or knowledge of defendants' application for such a permit; that subsequent protests concerning the construction to other township officials availed plaintiffs nothing; that they have been irreparably harmed, and that the value of their property has been depreciated as the result of said construction; and that they have no adequate remedy at law. They seek injunctive relief requiring the Marshalls to remove the barn or stable from the location complained of. By further amendment at the time of trial, plaintiffs averred that the erection of the stable also violates the provision of section 44 of the ordinance in that it is not a type of building permitted by section 41-b thereof.

Defendants admitted the ownership of the land involved; that the construction of a stable had been commenced and that their land was located within an "A District" under the zoning ordinance. However, they denied that the land in question was subject to the restriction sought to be imposed upon it, contending that the restriction was intended to apply to smaller tracts designated "lots" and that it did not apply to a tract of the size and character which defendants own. Defendants demanded proof of the additional allegations of plaintiffs' complaint and in

their new matter charged that plaintiffs were guilty of laches in that they failed to commence this action until May of 1962, when, by their complaint, they admit having knowledge of the existence of the structure in the fall of 1961. Plaintiffs denied the laches and asserted further that no substantial changes were made in the structure itself between the fall of 1961 and the time when this action was finally commenced.

It was upon the issues so framed that a hearing was held and testimony taken.

### FINDINGS OF FACT

1. Plaintiffs, who reside in Haverford, Delaware County, Pa., are the owners of a messuage and tract of land situate in West Pikeland Township, Chester County, Pa., containing approximately 12 acres. (The original acquisition by plaintiffs in May of 1959 was of 29 acres erroneously stated in the amended complaint to be 22 acres, out of which they have sold 2 tracts.) The improvements upon the property consist of a frame and stone dwelling formerly a tenant house, occupied by plaintiffs on weekends, a goat barn, several smaller outbuildings and a dwelling house now under construction.

2. Defendants own a tract containing 9.684 acres in said township which adjoins plaintiffs' property to the north or west. The improvements upon defendants' land consist of the main house, a garage with an apartment above it and several small incidental buildings, including one horse stable. Defendants reside upon this property.

3. Each of said properties is located within an "A District" as that district is defined by the zoning ordinance of said township.

4. Said ordinance provides, referring to the requirements in an "A District" as follows:

"Sect. 43: There shall be a front yard of at least fifty (50) feet, two side yards of an aggregate width

of at least eighty (80) feet, neither side being less than thirty-five (35) feet, a rear yard of at least fifty (50) feet; . . .

"Sect. 1 (1) Rear Yard: The surface space between the rear line of the lot and the rearmost point of the principal building upon the lot toward the rear line of the lot, extending through the entire width of the lot covered or uncovered by buildings. Any projections from the said principal building toward the rear line of the lot shall be considered the rearmost point of said building, including eaves, cornices, gutters, bay windows and porches.

"Sect. 44: Additional buildings of the type permitted in Section 41-b may be erected in the rear yards in A Districts; Provided, no more than fifteen (15) per cent of the surface area of the rear yard is occupied by said buildings and that the total area of all the buildings upon the lot does not exceed the maximum building area prescribed in Sect. 42.

"Sect. 41: No building shall be erected, altered or used, nor shall any lot be used or occupied hereafter, for any but the following purposes:

"(b) a building accessory to a single house, such to include private garages, professional offices or studios of doctors, lawyers, artists, musicians, dentists, teachers, architects and other similar professional practitioners."

5. Under date of December 1, 1961, defendant, James M. Marshall, made written application to the township zoning officer for a building permit to construct a new stable for horses upon his land. The application indicated that the proposed structure would be 36 feet long by 24 feet wide, having an area of 864 square feet, and that it would be constructed partly of wood and partly of cement block. The application further indicated that it would be located 12 to 15 feet from the left lot line, 1,500 feet from the street line,

800 feet from the right lot line and 300 to 400 feet from the back line. The application for the permit further stated that the name of the abutting property owner was R. Von Gerbig. No address for that abutting property owner was given.

6. Also under date of December 1, 1961, the township zoning officer issued a permit to James M. Marshall granting permission to him to construct a horse stable upon said property in accordance with the application referred to in finding of fact no. 5 above.

7. Despite the fact that the building permit did not issue until December 1, 1961, defendants, with the oral approval of the zoning officer, commenced excavation for the construction of the stable during the latter half of September of that year, after which the foundation was installed and cinder block walls were erected. As it now stands, its dimensions are 12 by 24 feet. It is designed to accommodate one horse. It is unfinished as yet, construction having stopped when defendants became aware of plaintiffs' complaints that it did not comply with the provisions of the zoning ordinance. At its closest point it is eight and one-half feet from plaintiffs' property line.

8. Plaintiff, Robert Von Gerbig, first observed the construction with which we are here concerned during the last week of October in 1961. Its condition as to completion was then essentially the same as it was at the time of the hearing. On November 1, 1961, he contacted one Cage, zoning officer, about this situation by telephone, and called him again on December 8, 1961. In January of 1962, he talked to one Windolph, a township supervisor, about the matter, and in February 1962, with one Lamb, the new zoning officer. On April 12, 1962, he received a letter from the then zoning officer, with which there was enclosed an opinion of the township solicitor, advising him that the permit issued to defendants would not be revoked.

9. The general area in which these properties are located is rural and agricultural in character. Dwelling houses are spaced at some distances from each other and the intervening open spaces, some of which have been enclosed by fences as fields, are devoted to the raising of crops or the pasturing or grazing of livestock. There are no designated streets as distinguished from roads in the area; neither is the area serviced by any common water supply or sewage disposal system.

Requests for findings of fact have been filed by the parties. Insofar as they have been restated in the findings of the chancellor, they are affirmed. Insofar as they are contrary to such findings, they are disaffirmed.

## DISCUSSION

We think that plaintiffs' application for equitable relief must be refused on at least three grounds. First, they have not made timely pursuit of the statutory remedy which the law has set up for one who claims to have been aggrieved, as these plaintiffs say they were; second, they have not satisfied us by the necessary quantum of proof that the value of their property in West Pikeland Township will be reduced if the proposed structure is permitted to stand; and, third, we believe that a stable of the type here proposed to be built is a permitted structure and its use a permitted use under the provisions of the ordinance.

In our opinion filed in this cause on October 9, 1962, (Von Gerbig v. Marshall, 11 Chester 74 (1962)) we held that the original complaint did not set forth sufficient facts to excuse plaintiffs' failure to follow the statutorily prescribed appeal procedures set up by the Act of May 1, 1933, P. L. 103, art. XX, sec. 2007, as last amended by the Act of August 25, 1959, P. L. 753, sec. 1, 53 PS §67007. However, we permitted plaintiffs to amend their complaint so that such facts might be averred if they existed.

The amendment then filed was answered and a hearing has now been held. As a result of that hearing, we now know that the permit under which this construction is sought to be justified was issued on December 1, 1961. Plaintiffs became aware of the construction in October of that year. They were in contact with the zoning officer concerning this matter as early as November 1st of that year. With this information at hand in advance of the issuance of the permit itself, plaintiffs had sufficient notice of what was going on to have permitted them to follow the procedure for which the above-cited statute makes provision. Having failed so to do, they cannot now resort to equity to accomplish the same end. See the cases cited in our earlier opinion referred to above.

In Phillips v. Griffiths, 366 Pa. 468 (1951), citing DeBlasiis v. Bartell and Oliveto, 143 Pa. Superior Ct. 485 (1940), it was held that one who seeks to enforce the provisions of a zoning ordinance through the intervention of a court of equity must show an injury special and peculiar to his property. The protection of property values was there held to be an incident of zoning laws; hence, one who showed damage to his property by reason of a violation of such laws had a right to have such infractions enjoined. See also Aiken v. Conti, 5 Chester 163 (1952).

In the instant case, we have intentionally failed to find as a fact that plaintiffs have suffered damage to their property in a form of a depreciation of its value as a result of defendants' construction of this stable. The husband-plaintiff's testimony upon that point was most inconclusive. He first testified that he had no success in the renting of his property since the construction of the stable was commenced, and then later said that the property had been rented between October 1962 and May or June of 1963, when a tenant who had gone into possession under a lease having a

term of one year had moved out and had failed to pay the rent reserved. He said that, in his opinion, the value of the property had been depreciated but he gave no opinion as to how much depreciation there was, having offered no before-and-after value or an expression of an amount of depreciation in terms of dollars and cents. No other witnesses were called to testify upon that point. If a depreciation in value did, in fact, result from the construction of the stable here in question, expert witnesses familiar with real estate values in the vicinity could and should have been called to testify upon that point.

While we recognize the husband-plaintiff's competency under the law to testify in that regard, we do not credit the testimony which he offered. In our view, such testimony cannot form an adequate basis upon which a finding of fact in support of plaintiffs' position can be founded. Having failed to establish the special and peculiar injury which the law requires, plaintiffs are not entitled to the relief they here seek.

But even if we were to overlook the objections to the granting of the relief here sought which we have already discussed, we think that the building here in question qualifies as being "a building accessory to a single house" permitted by section 41-b of the ordinance itself. In that regard, it will be noted that section 1 (1) of the ordinance defines a rear yard as being the area between the rear line of a lot and the rearmost point of the principal building upon that lot. Certainly the building now under consideration cannot be said to be the principal building located upon defendants' property.

Section 44, quoted above, permits buildings of the types mentioned in section 41-b to be erected in rear yards. The term "accessory building" is not defined by the Zoning Ordinance of West Pikeland Township. However, in Lord Appeal, 368 Pa. 121 (1951), it was

held that a tall radio antenna erected upon a dwelling in a residential zone constituted an accessory use of that property under the zoning ordinance, the court pointing out that radio and television with their accompanying antenna have become popular to the point where they approach the status of being a necessity under present-day conditions. In Borden Appeal, 369 Pa. 517, 522 (1952), it was said that "anything which logically accompanies the normal operation" of a property is accessory to a permitted use of it. In Del Guercio v. Zoning Board of Adjustment, 409 Pa. 457, 459 (1963), the Supreme Court stated that a use is accessory to the principal use of a dwelling where it "will serve and supplement the same purpose, the convenience of the family."

To say that the construction and use of a one-horse stable in an area in which this stable is to be located is not accessory to the dwelling use of a single house would require that we close our eyes to the true nature of the community itself. We venture that many houses similarly situated in the same locality keep horses for the convenience of the families who live in them. Certainly, the convenience of defendants' family will be served and supplemented by the maintenance of the horse they propose to maintain in the stable building which they propose to erect.

In our consideration of this matter, we have not attempted to decide what the framers of the ordinance intended in the use of the word "lot" in the sections thereof hereinabove quoted. Such a decision is not necessary to the determination of the issues here framed.

Neither have we passed judgment upon the constitutionality of the provision of section 43 thereof which plaintiffs assert as a bar to the erection of the stable here in question. The determination of that question is likewise not required in view of the disposition of the matter which we are here making. However, under

the authority of Schmalz v. Buckingham Township Zoning Board of Adjustment, 389 Pa. 295 (1957), the constitutionality of such a provision, as applied in an area such as the one here involved, would seem to be doubtful at best.

## CONCLUSIONS OF LAW

1. Plaintiffs have not established that they are entitled to the relief they seek or to any other equitable relief in the circumstances.

2. The one-horse stable which defendants propose to build and use upon their property will be "a building accessory to" the single house upon that property in which they now live; hence, a permitted structure by the terms of section 41-b of the Zoning Ordinance of West Pikeland Township.

3. The complaint should be dismissed, the relief prayed for denied and judgment rendered for defendants, James M. Marshall and Mary S. Marshall.

## DECREE NISI

And now, September 16, 1964, upon consideration of the foregoing case, it is ordered, adjudged and decreed: complaint dismissed; relief prayed for denied; judgment for defendants, James M. Marshall and Mary S. Marshall; plaintiffs to pay the costs.