STRANAHAN, P. J.,
— This is an appeal from the refusal of the Pymatuning Zoning Hearing Board to grant a variance to Willis H. Hamm and Florence J. Hamm, and further is an appeal from the interpretation of the zoning ordinance based on the 'theory that this ordinance is unconstitutional.
Mr. and Mrs. Willis H. Hamm are the owners of a lot on Crestview Drive in Pymatuning Township, which has a frontage of 271 feet and a depth of 330 feet. On June 17,1970, they purchased a mobile home, which they proposed to put on the lot. The mobile home is to be transported intact to the lot, where it is planned to install it by using a cement block base and connecting it to this base in a permanent manner. It is also proposed that a patio with an awning on it, which will be 66 feet by 10 feet, will be constructed.
The mobile home is 12 feet wide by 66 feet long and cost $10,512. It contains three bedrooms, a sizeable living room, combination dining-kitchen area, a bath *188 room and a utility room. The estimated cost of installation is $850, which would include the foundation work, but not the patio, and, once installed, the mobile home would be as difficult to move as a fabricated dwelling of the same size.
The lot on Crestview Drive owned by Mr. and Mrs. Hamm was purchased on October 13,1969, which was after the zoning ordinance with which the court is now dealing was adopted in Pymatuning Township.
The Pymatuning Township Zoning Ordinance divides the township into six zoning districts, which are as follows: Residential-agricultural, R-l; residential-one family, without public sewers and water, R-2; residential-one family, with public sewers and water, R-3; residential-multiple family, R-4; business highway service-B; and industrial, I.
R-l comprises about 75 percent of the area of the township. It permits single and two-family dwellings, but not multiple dwellings. R-2 and R-3 districts permit only residential use as single-family dwellings.
The zoning ordinance recognizes a mobile home as a type of single-family dwelling, but permits its use only in the R-l area. Mobile homes may locate in that area, either on single lots or in mobile home parks.
The lot owned by Mr. and Mrs. Hamm is in the area designated as R-2, which is residential-one family, without public sewers and water.
While it does not appear in the record, the court will take judicial notice of the fact that Pymatuning Township is located north of the Borough of Sharps-ville in an area which is semi-rural, in that there are residences and business establishments, but by and large the bulk of the township is sparsely or moderately populated.
The census figures indicate that in 1970 there were 3,050 residents, and that during the 10 years from *189 1960 to 1970 the population has increased 473 people.
The testimony also indicates that the area presently existing around the Hamm property consists of a small white frame house, directly north of the lot; a skirted trailer north of this lot, which trailer is smaller and older than the Hamm unit; two more trailers, one on Crestview Drive on the comer of Crestview and Hamburg Road, which trailer is not permanent; and a trailer on Hamburg Road which is not permanent and another trailer further north on Crestview Drive; an older home north of the first trailer on Crestview Drive; an old farm house in a dilapidated condition across the street from the Hamm lot and a farm house south of the Hamm lot and across the street.
Aerial photographs of the area have been offered in evidence. These photos demonstrate the rural aspects of this area. There has been considerable testimony offered, a portion of which the court agreed to receive at a hearing held before the court without a de novo hearing, at which time real estate experts were produced by both sides. The real estate expert for the township testified that mobile homes have a tendency to devaluate real estate prices in the area, while the expert for the property owners testified to the contrary. Neither expert was particularly impressive in that they spoke in generalities.
Mr. Leslie Spaulding, who is the Executive Director of the Shenango Valley Regional Planning Commission, which provides planning services to all Mercer County municipalities, testified that area R-3 is largely developed with single family homes, and is serviced with sanitary sewers and water facilities by the Reynolds Development. He further testified that the area involved is R-2 and is adjacent to the R-3 area, and it is intended that the sanitary sewers shall eventually be extended from the R-2 area into the *190 R-3 area, provided there was sufficient development in the R-2 area to warrant such an extension. He further testified that in his opinion the erection of a mobile home in the R-2 area would cause conventional homes not to locate there, and would have a tendency to decrease property values. However, this was merely an opinion and was not based on any factual information which would substantiate that opinion.
There have been a great many appellate court decisions in which the constitutionality of zoning ordinances has been attacked, and it is often times difficult to discover a uniformity of rulings in these opinions. It appears that the most logical way to approach a zoning problem is to first consider the area involved. In other words, the decisions that emanate from zoning disputes in a highly residential area are often times difficult to rationalize with decisions that result from a zoning dispute in a rural area. This philosophy is considered by the court in Schmalz et ux. v. Buckingham Township Zoning Board, 389 Pa. 295. At page 300, the court states:
“A regulatory zoning ordinance, which would be clearly valid as applied to the great cities, might be clearly invalid as applied to rural communities . . . Thus the question whether the power exists to forbid the erection of a building of a particular kind or have a particular use ... is to be determined, not by an abstract consideration of the building or of the thing considered apart, but by considering it in connection with the circumstances and locality.”
This case is also of interest in that it points out the fact that the zoning ordinance under consideration must be examined for reasonableness under the conditions that exist at the time of the examination rather than at some speculative time in the future. The court states, page 302:
*191 “We must determine the reasonableness of the regulation as it applies to conditions now existent.”
Along this line, the court, in Medinger Appeal, 377 Pa. 217, at page 225, states:
“The natural or zealous desire of many zoning boards to protect, improve and develop their communities, to plan a city or a township or a community that is both practical and beautiful, and to conserve the property values as well as the ‘tone’ of that community is commendable. But, they must remember that property owners have certain rights which are ordained, protected and observed in our Constitution, and which neither zeal nor worthwhile objections can impinge upon or abolish.”
The right to zone is based on the power of the township to enact ordinances promoting the health, safety, morals and general welfare of the inhabitants of the township. It is obvious that this ordinance has nothing to do with the health, safety or morals of inhabitants of Pymatuning Township, and the question, therefore, is whether its constitutionality can be sustained as promoting the general welfare of the township.
The burden of proving clearly and unmistakably the unconstitutionality of a legislative enactment is upon the person so asserting: Best v. Zoning Board of Adjustment, 393 Pa. 106; Archbishop O’Hara’s Appeal, 389 Pa. 35.
Accompanying this burden is the rule that where the constitutionality of a zoning ordinance has been attacked, it is presumed that the township legislative body acted with purpose to serve the public welfare and that all intendments are in favor of their action.
Even though appellants have this heavy burden, the courts are still bound to inquire as to whether or not a particular zoning classification bears a substantial relationship to the general welfare: Bilbar *192 Construction Company v. Easttown Township Board of Adjustment, 393 Pa. 62.
The issue that this court must decide, therefore, is whether the restriction against mobile homes in the R-2 district of Pymatuning Township, Mercer County, Pa., bears a substantial relationship to the general welfare of the citizens of that township.
Another factor that the court should take into consideration in determining whether or not this ordinance promotes the general welfare of the citizens of Pymatuning Township is the fact that the construction of the mobile home, together with the foundation and patio and awning will cost approximately $12,000, which is indicative of the fact that mobile homes are no longer inexpensive. Assuming that the average resident of Pymatuning Township makes approximately $6,000 a year, then a house costing $12,000 would be about the extent of his purchasing power. The point of this is that mobile homes are no longer a substitute for low cost housing, but rather represent the solution to the problem of the lower middle income family.
It is obvious that a wage earner who makes $6,000 a year has the right to live in the R-2 district, and that he has the right to build a home; yet the fact remains were he to try and build and furnish a conventional type of home for $12,000, it would be extremely doubtful that the end result would approximate the mobile home either in appearance or in convenience. It is certainly doubtful that he would have a three-bedroom house with a 14 foot x 19 foot living room, together with a kitchen-dining room, and a bath completely furnished for $12,000.
We believe that Pymatuning Township is basically a rural, sparsely populated area whose growth may be in the future increased, but there does not appear to be any likelihood that the growth will be rapid.
*193 Such being the case, we think that an ordinance which excludes mobile homes from the R-2 area, which actually is a section of the township which contains neither sewers nor water lines is arbitrary, capricious and unreasonable, and in violation of the rights of the property owners to use their property as they see fit.
We do not believe that the section of the ordinance which prohibits the installation of a mobile home in an R-2 district in any way promotes the general welfare of the township. We feel that the mobile home is a type of housing which will increase rapidly in the foreseeable future, and that as it is developed, it will become more attractive and more luxurious, and will eventually overcome the stigma that has been attached to it by those people who consider the mobile home to be nothing but a trailer.
We have examined the exhibits in this case, including the pictures of the houses, and we do not believe that the mobile home that Mr. and Mrs. Hamm propose to erect would detract from either the aesthetic appearance of the neighborhood or the value of properties.
We intend by this opinion to do nothing other than rule in this particular case as to this factual situation. As we originally pointed out, we believe that whether a zoning ordinance of this type contributes to the general welfare of the residents in the immediate area is a matter that must be considered in light of the factual situation existing in that area.
ORDER
And now, April 13, 1971, this court finds that that section of the ordinance of Pymatuning Township, Mercer County, Pa., which prohibits mobile homes from being erected on lots in the R-2 district is unconstitutional, and it is directed that the proper au *194 thoiities of said township shall issue a building permit to Mr. and Mrs. Willis H. Hamm, authorizing them to erect a mobile home on a lot owned by them in Pymatuning Township, Mercer County, Pa.