Schmalz et ux., Appellants, *v.* Buckingham Township Zoning Board of Adjustment.

Argued April 24, 1957.   Before Jones, C. J., Bell, Chidsey, Musmanno, Arnold, Jones and Cohen, JJ.

*Ward F. Clark*, with him *William M. Power* and *Achey & Power*, for appellants.

*William H. Satterthwaite, Jr.,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, June 3, 1957:

These appeals raise the problem of the reasonableness, hence the validity, of a section of a zoning ordinance which provides for a 50 foot set-back of property in a wholly agricultural district.

Charles Schmalz and Ida J. Schmalz, his wife, (hereinafter termed appellants) have owned property since before 1951 on Mechanicsville Road, Buckingham Township, Bucks County. This property consists of approximately 9 acres of land located in a wholly agricultural and rural community. An examination of the Zoning Map of Buckingham Township indicates that, with the exception of approximately 11 small communities, the entire township is classified as agricultural, and the Schmalz acreage is zoned as in an agricultural district.

In 1951 Buckingham Township adopted a Zoning Code. Article III, Section 3 of said Code, provides as to the erection of residences in an agricultural district: "Front Yard. There shall be a front yard on each street on which a lot abuts which shall not be less than fifty (50) feet in depth."

Without securing a building permit, the male appellant in March, 1955 proceeded to dig trenches for a foundation for a house on his land, and the trenches were located at a distance of 42 feet from a 33 foot wide highway, known as Mechanicsville Road.

Following an application by the male appellant for a building permit, and after a visit to the premises by the zoning officer, a building permit was refused on the ground the set-back from the road was only 42 feet.

An application was then made for a variance for the Board of Adjustment to permit the male appellant

to have a 42 foot set-back. After hearing the application for a variance was refused upon the ground that the male appellant had shown no hardship justifying a variance. From this refusal the male appellant took an appeal. After hearing the learned court below dismissed the appeal and, upon exceptions filed, the court en banc affirmed the hearing judge's order.

While the appeal was pending Schmalz continued to erect the building and the Buckingham Township Supervisors filed a bill in equity seeking an injunction 'against both appellants, husband and wife. After hearing an injunction was granted and, exceptions being filed, the court en banc affirmed the award of an injunction.

From the court's dismissal of the appeal from the Board of Adjustment and the granting of the injunction these appeals were taken. The court below found the male appellant had violated the zoning ordinance and that the Board of Adjustment did not abuse its discretion in refusing the allowance of a variance. With these two rulings we are in agreement.

In the court below the appellants properly raised the question of the validity of that section of the zoning ordinance providing for a set-back of property in this agricultural district. That the appellants in requesting a variance followed the procedure provided in the ordinance did not preclude them from questioning its validity: *Archbishop O'Hara's Appeal*, 389 Pa. 35, 131 A. 2d 587, and cases therein cited.

While there is a presumption as to the validity of this ordinance (*Whitpain Township v. Bodine*, 372 Pa. 509, 511, 94 A. 2d 737) and while it is our duty in construing this ordinance to adopt an interpretation, if possible, which prevents any conflict with the Constitution (*Fidelity-Philadelphia Trust Co. v. Hines*, 337 Pa. 48, 10 A. 2d 553; *Hotel Casey Co. v. Ross*, 343 Pa.

573, 23 A. 2d 737) yet we must determine the reasonableness of this township legislation as a valid exercise of the police power.

The late Mr. Justice HOLMES in *Pennsylvania Coal Company v. Mahon*, 260 U. S. 393, 413, 67 L. Ed. 322, 43 S. Ct. 158, stated: "Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law. As long recognized, some values are enjoyed under an implied limitation and must yield to the police power. But obviously the implied limitation must have its limits, or the contract and due process clauses are gone. One fact for consideration in determining such limits is the extent of the diminution. . . . The greatest weight is given to the judgment of the legislature, but it always is open to interested parties to contend that the legislature has gone beyond its constitutional power." Later in the same opinion, at p. 415, it was stated: "The general rule at least is, that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking."

In *Euclid et al. v. Ambler Realty Co.*, 272 U. S. 365, 71 L. Ed. 303, 47 S. Ct. 114, the court considered the validity of a zoning ordinance and whether it violated the constitutional protection to the right of property in an attempt at regulation under the guise of the police power. The late Mr. Justice SUTHERLAND, at pp. 386-388, stated: "Building zone laws are of modern origin. They began in this country about twenty-five years ago. Until recent years, urban life was comparatively simple; but with the great increase and concentration of population, problems have developed, and constantly are developing, which require, and will continue to require, additional restrictions in respect of the

use and occupation of private lands in urban communities. . . . Such regulations are sustained, under the complex conditions of our day, for reasons analogous to those which justify traffic regulations, which, before the advent of automobiles and rapid transit street railways, would have been condemned as fatally arbitrary and unreasonable . . .

"The ordinance now under review, and all similar laws and regulations, must find their justification in some aspect of the police power, asserted for the public welfare. The line which in this field separates the legitimate from the illegitimate assumption of power is not capable of precise delimitation. It varies with circumstances and conditions. *A regulatory zoning ordinance, which would be clearly valid as applied to the great cities, might be clearly invalid as applied to rural communities* . . . Thus the question whether the power exists to forbid the erection of a building of a particular kind or for a particular use, . . . is to be determined, not by an abstract consideration of the building or of the thing considered apart, but by considering it in connection with the circumstances and the locality." (Emphasis supplied.)

In one of the earliest cases in this Court on the subject of zoning, *White's Appeal*, 287 Pa. 259, 264, 134 A. 409, a test or yardstick of the legitimacy of the exercise of the police power in zoning was set forth: "Under the 14th Amendment, property cannot be taken except by due process of law. Regulation under a proper exercise of police power is due process, even though a property in whole or in part is taken or destroyed . . . Likewise, there should be a reasonable and substantial relation between the thing acted on and the end to be attained, one that promotes health, safety or general welfare, necessary to the common good, and a reasonable demand for regulation, not one that is merely an

unnecessary 'experimentation [or interference] with the fundamental rights of the individual': **Truax v. Corrigan, 257 U. S. 312, 338."** As the Court further said, p. 266: ". . . the power to thus regulate does not extend to an arbitrary, unnecessary or unreasonable intermeddling with the private ownership of property, even though such acts be labeled for the preservation of health, safety and general welfare. *The exercise must have a substantial relation to the public good within the spheres held proper.* It must not be from an arbitrary desire to resist the natural operation of economic laws or for purely aesthetic considerations". (Emphasis supplied.)

In *Kerr's Appeal,* 294 Pa. 246, 251, 144 A. 81, it was said: "So long as the restriction imposed has a substantial bearing on the health, safety morals, or general welfare of the public, the courts will not condemn it."

Our courts have long upheld the validity of reasonable regulations by way of zoning in urban and suburban areas. The present controversy presents the reasonableness of a zoning regulation not in an urban or suburban area, but in a district wholly agricultural and rural in character.

Our primary inquiry is whether the set-back provided in this section of the zoning ordinance has a substantial bearing on the health, safety, or morals of the public.

The hearing judge whose ruling was affirmed by the court en banc upholds the validity on several grounds: (1) that second class townships have been authorized by statute to promulgate regulations and restrictions concerning the height, number of stories, and size of buildings and other structures, etc., and to establish by ordinance and maintain building lines and set-back building lines upon any or all public streets,

roads, highways, lanes and alleys;[1] (2) that since the power to zone must not be exercised under the code, supra, in the face of a remonstrance by the owners of more than fifty per cent of the assessed valuation of the township, and, since no remonstrance thus provided was made, therefore the regulation has the support of substantial public opinion in the township; (3) that in the future this area may become non-agricultural in character and a suburban area. None of these reasons furnish appropriate tests for determining the reasonableness of the regulation. We must determine the reasonableness of the regulation as it applies to conditions *now existent.*

What reasonable relationship has the set-back line of 50 feet to the health, safety or morals of this particular community? It certainly does not lessen congestion on Mechanicsville Road nor does it secure safety from fire, panic or other dangers. It does not promote health, nor provide adequate light and air, nor prevent the overcrowding of land nor the undue concentration of population. It does not facilitate adequate provision of transportation, water, sewerage, or other public requirements, and it does not conserve the value of buildings in the community. That such a set-back in building lines accomplishes these objects in populous areas does not justify its employment in sparsely populated or agricultural areas.

This section of the zoning ordinance bears no reasonable relationship to the health or the safety or the morals of this community and therefore is an unreasonable and improper exercise of the police power of the township legislative authority.

---

[1] *Act of July 1, 1937*, P. L. 2624. (This section is now incorporated as Section 2001 of The Second Class Township Code, 53 P.S. §19093-2001.)

The court en banc in its opinion, conceding that the question was a close one, stated: "While the regulation would seem to approach the limit which should mark the boundary between a statutorily authorized and constitutionally valid exercise of the police power for the general welfare, on the one hand, and an unlawful and arbitrary confiscation of some of the rights of private property, on the other, we are not convinced that such intangible line of demarcation has here been passed."

To sustain this regulation would amount to an unlawful and arbitrary confiscation of the rights of this property owner in this type of community. The line of demarcation has not only been passed but left far behind in this unreasonable and invalid exercise of the police power.

The language of this Court in *Medinger Appeal,* 377 Pa. 217, 225, 104 A. 2d 118, is particularly applicable: "The natural or zealous desire of many zoning boards to protect, improve and develop their community, to plan a city or a township or a community that is both practical and beautiful, and to conserve the property values as well as the 'tone' of that community is commendable. But they must remember that property owners have certain rights which are ordained, protected and preserved in our Constitution and which neither zeal nor worthwhile objectives can impinge upon or abolish."

In view of our conclusion that this section of the zoning ordinance is invalid it is unnecessary to discuss and determine other questions raised upon these appeals.

Both rulings of the court below—that in the injunction proceeding and that in the appeal from the Board of Adjustment—are based on the validity of this section of the ordinance. In view of our holding, both appeals must be sustained and the decrees in both in-

304

stances reversed. The costs of both appeals are placed upon the appellee.

Mr. Justice COHEN dissents.