Cleaver *v.* Board of Adjustment, Appellant.

Argued January 7, 1964.   Before BELL, C. J., MUS-
MANNO, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Guy G. deFuria*, with him *Robert S. Gawthrop, William H. Rivoir, Jr.*, and *deFuria, Larkin & deFuria* and *Gawthrop & Greenwood*, for appellant.

*John O. Platt, Jr.,* with him *MacElree, Platt, Marrone & Harvey,* for appellees.

OPINION BY MR. CHIEF JUSTICE BELL, May 11, 1964:

The question involved is the validity and constitutionality of the amended zoning ordinance of Tredyffrin Township, Chester County.*

An equally divided Board of Adjustment affirmed ex necessitate** the issuance of a building permit for the erection of a garden type of apartment to the present intervenor appellants. Thereafter the Court of Common Pleas of Chester County, *without taking any testimony,* reversed and held the amendatory ordinance (a) invalid because of lack of conformity with Tredyffrin's comprehensive plan, and (b) Unconstitutional because it was spot zoning.

The tract in question is located in the Town of Paoli, the western end of the Pennsylvania Railroad's "Main Line" commuter service to Philadelphia. It consists roughly of 11 acres bounded on the south by the railroad tracks and the Paoli Station platform, on the west by the Paoli Elementary School, on the north by Central Avenue, and on the east by the large Burroughs Corporation Research Center. The School tract (to the west), and the property across Central Avenue (to the north) on which small residences have been built, are zoned R-3 Residential. The Burroughs land, which extends east from the tract in suit, along the

---

* "[K]nown as 'The Tredyffrin Township Zoning Ordinance of 1939 as Amended'". This was one of a series of Amendments and revisions of the Ordinance of December 11, 1939, which was amended and reenacted by an Ordinance approved and adopted by the Board of Supervisors on July 11, 1955, and revised January 1, 1962. The Amendment in question is Ordinance No. 138, adopted September 11, 1961.

** One of the three members of the Board disqualified himself; the other two disagreed.

railroad to Route 202 is zoned C-1 Commercial. Directly west of the school and north of the Pennsylvania Railroad westbound station building, are three very small lots, two of which are zoned C-1, and one, R-3. Lincoln Highway (Lancaster Pike) runs on the other side of the Pennsylvania Railroad tracks and for one or two miles (directly opposite the property in suit) is zoned on both sides C-1 and has only business properties.

The action here complained of is the down zoning of the tract in suit from R-3 *to R-4*. R-3 allows residences on lots of 12,000 square feet and no apartment use whatever. R-4 permits garden or group type apartments. C-1 (Commercial), which is the classification for a considerable number of the neighboring properties, including those above mentioned, permits various business uses such as retail store, bank, restaurant, certain kind of shops, and *any use permitted in R-4*. As we have just noted, R-4 specifically permits the type of apartment* which appellants seek to construct and appellees seek to prevent.

To answer the questions involved we must consider (a) the Constitution, and (b) the law pertaining to zoning, including a comprehensive plan.

### The Right of Property Owners and the Powers of Government

The law governing the Constitutionality of zoning legislation may be thus summarized:

The Constitution of the United States in the Fifth Amendment and in the Fourteenth Amendment, and

---

\* The R-4 classification was very recently amended to include this type of apartment. We deem it unnecessary to recite the protracted history of appellants' attempts to secure zoning action favorable to their contemplated plan of development.

the Constitution of Pennsylvania in Article I, §1, ordain and guarantee the right of private property. Article I, §1, of the Constitution of Pennsylvania provides: "All men . . . have certain *inherent and indefeasible* rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property . . . ."

The historical origin and development of our Country, our Birthright and Heritage of Freedom and the (so-called) inalienable fundamental rights, privileges and immunities guaranteed by our Constitution are too often forgotten today.

The right of private property, together with the right of freedom of speech, freedom of religion, and freedom of the press are the Hallmarks of western civilization. These Basic Freedoms constitute the fundamental differences which distinguish—and create the great unpassable gulf which divides—western civilization and free peoples, from Communists and from other peoples who are ruled by a despotic dictator.

It is clear beyond the peradventure of a doubt that the ownership and possession of private property necessarily includes its lawful use—it would be of little or no value unless the owner can deal with and use it as he desires, so long as its use is lawful.

In *Lhormer v. Bowen,* 410 Pa. 508, 188 A. 2d 747, the Court aptly said (page 512):

". . . As stated in Lened Homes, Inc. v. Dep't of Licenses, . . . [386 Pa.], at page 54: ' "An owner of property is still entitled in Pennsylvania to certain unalienable constitutional rights of liberty and property. These include a right to use his own home [or property] in any way he desires, provided he does not (1) violate any provision of the Federal or State Constitutions; or (2) create a nuisance; or (3) violate any covenant, restriction or easement; or (4) violate any laws or zoning or police regulations which are consti-

tutional." ' See also, Andress v. Zoning Board, 410 Pa. 77, 188 A. 2d 709 (1963)." See to the same effect: *Lord Appeal,* 368 Pa. 121, 81 A. 2d 533, and cases cited therein.

Nevertheless, it is well settled that that Constitutionally ordained right of property is and must be subject and subordinated to the Supreme Power of Government—generally known as the Police Power— to regulate or prohibit an owner's use of his property provided such regulation or prohibition is clearly or reasonably necessary to preserve or protect the health or safety or morals and general welfare of the people: *Archbishop O'Hara's Appeal,* 389 Pa., supra; *Medinger Appeal,* 377 Pa., supra; *Lord Appeal,* 368 Pa., supra; *White's Appeal,* 287 Pa. 259, 134 A. 409.

However, neither the power of the Executive arm nor of the Legislative arm of our Government is unlimited. See, for example, *Youngstown Sheet & Tube Co. v. Sawyer,* 343 U.S. 579; and a myriad cases of this Court, including *Tate v. P.T.C.,* 410 Pa. 490, 190 A. 2d 316. The limitation on the Police Power of Government in this field is emphasized by the Fifth Amendment to the Constitution of the United States, which provides: ". . . nor shall private property be taken for public use, without just compensation", and similarly by Article I, §10, of the Pennsylvania Constitution, which provides: ". . . nor shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured." The dividing line between a regulation (by zoning legislation) and a "taking" is in many cases shadowy and difficult to draw or delineate. A "taking" is not limited to an actual physical possession or seizure of the property; if the *effect* of the zoning law or regulation is to deprive a property owner of the lawful use of his property it amounts to a "taking", for which he must be justly compensated: *United States*

*v. Causby,* 328 U.S. 256; *Gardner v. Allegheny County,* 382 Pa. 88, 114 A. 2d 491; *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393; *Miller v. Beaver Falls,* 368 Pa. 189, 82 A. 2d 34; *Archbishop O'Hara's Appeal,* 389 Pa. 35, 131 A. 2d 587; *Medinger Appeal,* 377 Pa. 217, 104 A. 2d 118; *Lord Appeal,* 368 Pa., supra; *Sansom Street. Caplan's Appeal,* 293 Pa. 483, 490, 143 A. 134.

It may be helpful to add that an Ordinance is presumed to be valid and Constitutional and the burden of proving otherwise is upon one who challenges it: *Di Santo v. Zoning Board of Adjustment,* 410 Pa. 331, 189 A. 2d 135; *Phi Lambda Theta Zoning Case,* 400 Pa. 60, 161 A. 2d 144; *Schmalz v. Buckingham Twp. Z.B.A.,* 389 Pa. 295, 132 A. 2d 233; *Archbishop O'Hara's Appeal,* 389 Pa., supra; *Whitpain Township v. Bodine,* 372 Pa. 509, 94 A. 2d 737. However, zoning regulations must be strictly construed because in derogation of a property owner's Constitutional rights: *Phi Lambda Theta Zoning Case,* 400 Pa., supra; *Rolling Green Golf Club Case,* 374 Pa. 450, 97 A. 2d 253; *Medinger Appeal,* 377 Pa., supra; *Lord Appeal,* 368 Pa., supra; *Lukens v. Ridley Twp. Zoning Board of Adjustment,* 367 Pa. 608, 612, 80 A. 2d 765.

## General Zoning Powers, Standards and Restrictions

1. Municipalities are not sovereigns; they have no original or fundamental power of legislation; a municipal or councilmanic body can enact only the ordinances and exercise only the zoning powers which are authorized by the Legislature, and the Legislature can delegate or grant only those legislative and zoning powers which are Constitutionally permitted: *Cali v. Philadelphia,* 406 Pa. 290, 177 A. 2d 824; *Commonwealth ex rel. Truscott v. Philadelphia,* 380 Pa. 367, 111 A. 2d 136; *Allentown School District Mercantile Tax Case,* 370 Pa. 161, 87 A. 2d 480; *Genkinger v. New Castle,* 368

Pa. 547, 84 A. 2d 303; *Murray v. Philadelphia*, 364 Pa. 157, 71 A. 2d 280; *Kline v. Harrisburg*, 362 Pa. 438, 68 A. 2d 182.

2. Certain and definite and valid standards for zoning must be prescribed in the Legislative Act and in the zoning ordinance: *Phi Lambda Theta Zoning Case*, 400 Pa., supra; *Archbishop O'Hara's Appeal*, 389 Pa. 35, 50, supra; *Katzin v. McShain*, 371 Pa. 251, 89 A. 2d 519. Accord: *Dauphin Deposit Trust Co. v. Myers*, 388 Pa. 444, 130 A. 2d 686.

3. Zoning classifications are largely within the sound discretion and judgment of the pertinent legislative or zoning body, subject to the provisions and limitations of the Constitution. Health, and safety, and morals, and general welfare are the indispensable sine qua non for a zoning ordinance. Moreover, in connection with general welfare, the nature, the size, and the particular and the general character of the property in question and of the neighborhood and the district, are important factors which, among others, must be considered by the zoning authorities: *Medinger Appeal*, 377 Pa. 217, 104 A. 2d 118; *Gratton v. Conte*, 364 Pa. 578, 73 A. 2d 381; *Sun Oil Co. v. Zoning Board of Adjustment*, 403 Pa. 409, 169 A. 2d 294.

4. A planning commission and a comprehensive plan are often wise,* but are not necessary, unless the

---

* The natural or zealous desire of many zoning boards to protect, improve and develop their community, to plan a city or a township or a community that is both practical and beautiful, and to conserve the property values as well as the "tone" of that community is commendable. But they must remember that property owners have certain rights which are ordained, protected and preserved in our Constitution and which neither zeal nor worthwhile objectives can impinge upon or abolish.

However, planning is not, as some zealous advocates believe, something new. Planning is as old as the hills. Hannibal, Alexander the Great, Genghis Khan, Napoleon, Wellington, Washington, Grant, Lee, Eisenhower, and nearly all the great Generals of

Legislature or the legislative body clearly otherwise provides. The final decision in zoning matters rests in the legislative body and not in a planning commission, and a township or borough or county or city may adopt or modify or reject any comprehensive or master plan which is prepared by a planning commission: *Di Santo v. Zoning Board of Adjustment,* 410 Pa., supra; *Gratton v. Conte,* 364 Pa., supra.

5. A comprehensive plan is ordinarily separate and distinct from an ordinance, but it is possible for an ordinance in and of itself to be a comprehensive plan, unless the Legislature or the legislative body clearly otherwise provides. See: *Donahue v. Zoning Board of Adjustment,* 412 Pa. 332, 194 A. 2d 610; *Key Realty Co. Zoning Case,* 408 Pa. 98, concurring opinion, page 120, 182 A. 2d 187.

6. A comprehensive plan does not contemplate or require a "master-plan" which *rigidly* provides for or attempts to answer in minute detail every possible question regarding land utilization or restriction. Neither a zoning ordinance nor a comprehensive plan is absolutely rigid, static and unchangeable; either or both may be amended, supplemented, changed, modified or repealed—in the sound discretion of the legislative body and in accordance with statutory and other pertinent legal and Constitutional requirements—as conditions or changing circumstances may require: *Furniss v. Lower Merion Township,* 412 Pa. 404, 194 A. 2d 926; *Donahue v. Z.B.A.,* 412 Pa., supra.

---

history planned their campaigns and battles. Business men plan in advance their inventories and future business; every great doctor plans a serious operation; every able lawyer plans the trial or argument of important cases; housewives plan their meals and their day. Nevertheless, planning must not become such a fetish that little or no consideration is given to the Constitutionally ordained rights of property owners: *Medinger Appeal,* 377 Pa. 217, 225, 104 A. 2d 118; *Schmalz v. Buckingham Township Zoning Board,* 389 Pa. 295, 303, 132 A. 2d 233.

7. Public hearings and public approval are often wise, but are mandatory only when required by the Legislature or by the Legislative body: *Lhormer v. Bowen,* 410 Pa., supra; *Kelly v. Philadelphia,* 382 Pa. 459, 115 A. 2d 238. Moreover, if public hearings are held, the approval or disapproval expressed thereat is not binding upon the Legislative body or the zoning board, unless the Legislature or Legislative body clearly otherwise provides. Cf. The Second Class Township Code, Act of May 1, 1933, P. L. 103, Art. XX, §§2002, 2004, as amended, 53 PS §§67002, 67004.

8. Spot zoning is unconstitutional: *French v. Zoning Board of Adjustment,* 408 Pa. 479, 184 A. 2d 791; *Putney v. Abington Twp.,* 176 Pa. Superior Ct. 463, 108 A. 2d 134; *Boyle Appeal,* 179 Pa. Superior Ct. 318, 116 A. 2d 860.

### Comprehensive Plan

All parties concede that the Land Use Plan for Tredyffrin Township issued by the Planning Commission in 1961, fulfills the legal requirements of a Comprehensive Plan.* Appellants contend that the rezoning here at issue is within and in conformity with the Plan. On the other hand, appellees argue that although apartments, under the literal provisions of the "P" Professional zoning classification could, consistently with the plan, be erected on the property in suit, the *permitted* apartment-uses under this amended ordinance failed to conform to the plan. Appellees' principal objections are that apartment-uses in R-4(a) permit too great a population *density* per square foot, and (b) fail sufficiently to restrict set-back and spacing of buildings.

---

* It was prepared in consultation with the Planning Commission by the Government Consulting Service of the Fels Institute of Local and State Government of the University of Pennsylvania and represents a careful study covering a period of over four years.

Appellees take too narrow a view of the Township's Land Use Plan in particular and of the function of a Comprehensive Plan in general. The plan takes into consideration, inter alia, present conditions and the foreseeable likely future development of the Township. A Comprehensive Plan, we repeat, need not and indeed should not be required to fix the zoning map of the Township in a rigid and immutable mold. See: *Furniss v. Lower Merion Township*, 412 Pa., supra. Such a plan may and should (as here) set out general guideposts and guidelines for the use of various large and occasionally various small parts or areas or districts of the Governmental subdivision, for the guidance of zoning policy.

The Comprehensive Plan is subdivided—not including the *Summary of Recommendations*—into four major categories, viz., *Background and Objectives; Planning for Residential Areas; Planning for Commercial Areas; and Planning for Professional and Limited Industrial Uses.* The Comprehensive Plan wisely permitted a choice of alternatives for particular area or districts or parcels of property.

In the *Summary of Recommendations,* under the heading "Recommendations for Professional and limited industrial uses", the Plan pertinently provides: "*3.* About 30 acres between Central Avenue and the Main Line of the Pennsylvania Railroad in Paoli is proposed for P-Professional type uses (including Burroughs Research Center)."

Moreover, under the heading "Recommendations for residential development", the Plan provides: "*3.* Rezoning of several tracts close to rail commuter stations in Paoli, Berwyn and Strafford to permit *apartment*\* and professional development."

---

\* Italics throughout, ours.

Furthermore, in the general discussion of how population and business should and may be wisely spread throughout the Township, the plan states:

> "*Apartments are proposed as transitional uses between residential and non-residential areas, in accessible locations.* The appropriateness of a particular location for apartment development will depend upon such criteria as topography, available acreage, depth of lot, etc.

> "While apartments are a residential use, their locational requirements are quite similar to those for non-residential uses. Apartments, because of their more intensive use of land, require good highway and rapid transit facilities. Because of the relatively low site coverage, particularly for multi-story developments, *apartments can be designed so as to be compatible with both adjoining residential and non-residential uses.*"

It is clear that the Tredyffrin Land Use Plan (a) permits a defined range of choices in the zoning of appellant's property (as well as neighboring properties), and (b) *does not command* particular requirements of population density or set-back or spacing for apartments thereon, and (c) clearly envisages and permits a proper zoning of the property here in question for apartments.

We find that the lower Court was in error in concluding that this amended ordinance violated the comprehensive plan which the Township Board of Supervisors approved and relied on.

## Spot Zoning

The lower Court first expressly held and thereafter impliedly held that the ordinance was unconstitutional because it amounted to "spot" zoning. With this conclusion, we disagree. It is very difficult to define "spot" zoning. Zoning is a legislative division of a

community into areas or districts, in each of which only certain designated uses of land and/or buildings are permitted. Generally speaking, spot zoning is the arbitrary and unreasonable classification and zoning of *a small parcel of land*. This small parcel of land is usually set apart or carved out of a surrounding or a large neighboring tract, with no reasonable justification for the differential zoning.

In *Putney v. Abington Township*, 176 Pa. Superior Ct., supra, the Court aptly said (page 474) :

" '. . . an ordinance cannot create an "island" of more or less restricted use within a district zoned for a different use or uses, where there are no differentiating relevant factors between the "island" and the district. A singling out of one lot or a small area for different treatment from that accorded to similar surrounding land indistinguishable from it in character, for the economic benefit of the owner of that lot or to his economic detriment, is invalid "spot" zoning.' "

Assuming, arguendo, that this 11 acre tract is small enough to fall under the ban of "spot" zoning, we find that the ordinance with respect thereto is valid and Constitutional. We first note that the proposed apartment is on land immediately adjacent to the main line tracks of the Pennsylvania Railroad with their very heavy traffic. Furthermore, a large part of the surrounding land has the same or virtually the same classification as the tract in suit. As above pointed out, the land immediately to the East and to the South, as well as two small pieces nearby to the West, are classified C-1. *All R-4 uses are permitted in C-1 districts.* Thus the *uses* permitted by the down zoning under attack are substantially similar to those permitted on numerous adjoining properties. Moreover, the lower Court found—and no one on appeal has argued to the contrary—that a high pressure pipeline under 3.8 acres of the tract (in the shape of an "L"), renders the build-

ing of dwellings upon it impractical. Thus a change from R-3 to R-4, and appellants' contemplated development, have at first blush, a reasonable basis. See: *Garbev Zoning Case,* 385 Pa. 328, 122 A. 2d 682; *Gratton v. Conte,* 364 Pa., supra; *Boyle Appeal,* 179 Pa. Superior Ct., supra.

To summarize: The topography, location and characteristics of the property *undoubtedly justify* the reclassification and rezoning.

When no additional testimony is taken by the lower Court the test before this Court is whether the Board of Adjustment clearly abused its discretion or committed an error of law: *Coleman v. Zoning Board of Adjustment,* 413 Pa. 103, 196 A. 2d 323; *Brennen v. Zoning Board of Adjustment,* 409 Pa. 376, 379, 187 A. 2d 180; *Valley Forge Industries, Inc. Appeal,* 406 Pa. 387, 177 A. 2d 450. Where additional testimony is taken by the lower Court, the test in such a case is whether the lower Court clearly abused its discretion or committed an error of law: *Forest Hills Borough Appeal,* 409 Pa. 392, 187 A. 2d 166; *Ashline v. Bristol Township Zoning Board of Adjustment,* 408 Pa. 245, 182 A. 2d 531; *Rogalski v. Township of Upper Chichester,* 406 Pa. 550, 178 A. 2d 712.

This case is very unusual because the Board of Adjustment, for reasons hereinabove set forth, made no findings of fact or conclusions of law and wrote no opinion; and the lower Court took no additional testimony.

We conclude that in invalidating Tredyffrin's amendatory zoning ordinance, the lower Court committed an error of law.

Judgment reversed.

Mr. Justice COHEN and Mr. Justice EAGEN concur in the result.