Henry Jacobs *v.* Philadelphia Zoning Board
of Adjustment.

Argued October 7, 1970, before President Judge
BOWMAN, and Judges CRUMLISH, JR., KRAMER, WILKIN-
SON, JR., MANDERINO, MENCER and BARBIERI (who has
since been appointed to the Supreme Court of Pennsyl-
vania and did not participate in the decision).

198

*Herbert H. Hadra,* with him *Robert H. Aaronson* and *Maurice Freedman,* for appellant.

*Carl K. Zucker,* Deputy City Solicitor, with him *Matthew W. Bullock, Jr.,* Second Deputy City Solicitor, and *Levy Anderson,* City Solicitor, for appellee.

OPINION BY JUDGE MANDERINO, February 4, 1971:

In January, 1961, Henry Jacobs, appellant, purchased a two-story house with a basement, located in Philadelphia. The house had been used as a three-family unit dwelling and Jacobs continued such use, occupying the basement as his own living quarters. In November, 1963, the Philadelphia Department of Licenses and Inspections notified Jacobs that the zoning regulations in the area in which his house was located did not permit three-family dwellings. Jacobs, because of the Department's claim, requested from the Zoning Division of the City of Philadelphia permission to use the house as a three-family unit dwelling. His application was refused and he appealed to the Zoning Board of Adjustment, which also refused his request. On appeal to the Court of Common Pleas of Philadelphia County, the matter was remanded to the Zoning Board of Adjustment for reconsideration. On remand

the Board again refused Jacobs' request and this appeal followed.

This appeal was originally filed in the Supreme Court of Pennsylvania and under the Commonwealth Court Act (Act No. 185 of January 6, 1970); 17 P.S. 211.13 (1970), was transferred to the Commonwealth Court.

The Zoning Board of Adjustment treated appellant's request as one for a variance. Under the Philadelphia Zoning Ordinance an applicant may be granted a variance if certain criteria are met. These criteria are found in Section 14-1802 of the Philadelphia Zoning Ordinance. Under the ordinance, the applicant, in this case Jacobs, has the duty of presenting evidence relating to the criteria set forth in the ordinance. Although the Philadelphia ordinance lists twelve (12) criteria which must be met for the granting of a variance, essentially all of the criteria fall under the two key umbrellas ordinarily necessary under zoning ordinances in the Commonwealth of Pennsylvania for the granting of a variance. The two requirements are: (a) unnecessary hardship upon and which is unique or peculier to the property involved, as distinguished from the hardship arising from the impact of the zoning ordinance on the entire district; (b) the proposed variance is not contrary to the public safety, health, moral or general welfare. *DiSanto v. Zoning Board of Adjustment,* 410 Pa. 331, 189 A. 2d 135 (1963).

The main thrust of Jacobs' argument was that unless the variance were granted he would suffer an unnecessary hardship. He asserted that his sole reason for purchasing the house was his belief that he could live there and rent the other two (2) apartments. If this is not possible he alleges financial loss. These facts, according to Jacobs, would result in an unnecessary hardship. Accepting the truth of the assertions

does not help his case. The hardship alleged does not relate to anything special or unique about the property itself. The assertions justified only the inference that Jacobs would make less money from his use of the home as a two-family dwelling than a three-family dwelling.

This kind of financial loss alone does not constitute the unnecessary hardship sufficient to warrant the granting of a variance. *O'Neill v. Zoning Board of Adjustment of Philadelphia County*, 434 Pa. 331, 254 A. 2d 12 (1969) ; *DiSanto v. Zoning Board of Adjustment of Lower Merion Township*, 410 Pa. 331, 189 A. 2d 135 (1963) ; *Hasage v. Philadelphia Zoning Board of Adjustment*, 415 Pa. 31, 202 A. 2d 61 (1964).

In *Hasage*, which is quite similar to this case, applicants bought their property with the belief that its use as a multiple-family dwelling was permissible. They expended considerable sums of money preparing the property for such use. In fact, multiple-family dwellings were not permitted in the area and the Court refused to grant a variance simply because multiple-family use would make the property more financially productive. The Court concluded that the economic loss was not the type of unnecessary hardship which the law required to exist before a variance could be issued. In light of the *Hasage* case, the Board could not have found the requisite unnecessary hardship to grant a variance.

Jacobs also asserts that he established that the grant of the variance would not affect the health, safety, and morals of the neighborhood or the community. He claims that a contrary Board finding was not warranted. Even were this true, he would not have been entitled to a variance. The showing of unnecessary hardship is an indispensable requirement to the granting of a variance.

A challenge is also made to another of the Board's findings which stated that the basement of the house was never intended to be used for residential purposes. We fail to see the relevancy of the matter. Even were it intended at some point in time that the basement be used for residential purposes, it would be irrelevant so far as the issue of a variance is concerned.

We have also examined appellant's argument that at the time he purchased the property in 1961, he did not know that its use would be limited to two families rather than three. His lack of knowledge and his failure to obtain from the seller a certificate of the property's zoning status does not entitle him to a variance. *Hasage v. Philadelphia Zoning Board of Adjustment,* 415 Pa. 31, 202 A. 2d 61 (1964).

A variance granted by a Board of Adjustment is not something that can be given upon the whim of the Board or on a personal basis to an individual. It must strictly meet the requirements of the law, particularly because a variance by definition is the grant of that which is in "violation" of the zoning ordinance. It is allowed only because certain pieces of property within a zoning district may be unique in some way such as location, topography or size and the zoning law which causes no injustice in most of the zoning district would result in an injustice or a "taking of property". *See National Land and Investment Company v. Kohn,* 419 Pa. 504, 215 A. 2d 597 (1965). The applicant Jacobs, in this case presented no evidence to meet the necessary criteria as to hardship. We have reviewed the record and conclude that the Board could not legally have done otherwise. The denial of the variance request to Jacobs was proper. Finding no error of law or abuse of discretion we cannot disturb the denial of the variance. *Hasage v. Philadelphia Zoning Board of Adjustment,* 415 Pa. 31, 202 A. 2d 61 (1964).

Jacobs further submits that he was not asking for a variance, even though the Board of Adjustment treated his request as one for a variance. He has characterized his request in various ways—sometimes as a "variance with conditions"; at other times as a "restricted grant", or "a special permit", or "a special use permit". He also claims that his request should be permitted as a nonconforming use.

We have considered these possibilities and none of them require a reversal. Citizens may use their property under zoning regulations if the use of the property comes under one of the following uses:

(1) *Permitted use* (a citizen's use of his property for a purpose allowed by the zoning ordinance. Such use is in compliance with specific construction controls spelled out in the zoning ordinance for all property in the zoning district. Construction with such controls does not adversely affect the health, safety, or morals of the community).

(2) *Permitted conditional use* (a citizen's use of his property for a purpose allowed by the zoning ordinance. Such use is in compliance with specific construction controls spelled out completely or partially by the citizen for his property in the zoning district. Construction with such controls does not adversely affect the health, safety, or morals of the community. Even though this use is permitted by the zoning ordinance, it is sometimes unfortunately called a special exception. In the Philadelphia Zoning Ordinance the permitted conditional use is called a use by "certificate").

(3) *Permitted accessory use* (a citizen's use of his property for a purpose allowed by the zoning ordinance. Such use is a parasitic use which standing alone would not be permitted, but is permitted in conjunction with the main use if it is customarily incidental to such main use).

(4) *Nonconforming use* (a citizen's use of his property for a purpose not allowed by the zoning ordinance or a use not in compliance with specific construction controls spelled out in the zoning ordinance for all property in the zoning district, but the use is allowed as a matter of constitutional right because the use existed prior to the zoning regulations).

(5) *Variance* (a citizen's use of his property for a purpose not allowed by the zoning ordinance or a use not in compliance with specific construction controls spelled out in the ordinance for all property in the zoning district, but the use is allowed to avoid an unjust hardship. It is a recognition of the impossibility of writing regulations in advance that would be just in the case of each and every property in the zoning district).

There is no possibility that Jacobs' request could fall under either the *permitted use* or the *permitted conditional use* outlined above. Jacob's property lies, under the present zoning regulations, in an "R-5" district and multiple-dwellings are not allowed either as *permitted uses* or as *permitted conditional uses*. Neither can Jacobs' requested use of the property be an *accessory use* since it is not subordinate and customarily incidental to any main use. *Philadelphia, Pennsylvania Zoning Code* §14-102(2) (1970).

We have already discussed the proper denial of the *variance* request. Jacobs, however, seems to argue that a variance with "conditions" could have been granted. The conditions he suggested were that the premises be limited for sleeping purposes without housekeeping. But there can be no such "permit" or "permission" of this nature. An applicant must first qualify for a variance as outlined above, before a Board can consider proper conditions. The Board, if the applicant does not qualify for a variance, cannot give a permit even

204

with conditions and ignore the prerequisites for the variance itself. The variance must be there and allowable before the question of "conditions" arises.

Jacobs finally contends that he is permitted to use his premises as a three-family dwelling because it is a *nonconforming use* and such use was permitted under prior zoning. Although the record indicates that this matter was discussed and the Board made several findings that at the time Jacobs purchased the property the zoning was different, the Board treated his request as a request for a variance and we do not consider the question of the nonconforming use on this appeal. It has not even been established that the Board has jurisdiction over the matter.

It may be that Jacobs can establish at the proper time, in a proper forum if necessary, the status of his property as a nonconforming use and could therefore continue to use it as a multiple-family dwelling, even without any permits. We do not pass on these questions.

Ordered affirmed.