## St. Vladimir's Ukrainian Orthodox Church *v.* Fun Bun, Inc., and Zoning Board of Adjustment.

Argued June 2, 1971, before President Judge Bow-MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER and ROGERS.

*John D. Egnal*, with him *Michael H. Egnal* and *Egnal & Egnal*, for appellant.

*Ronald H. Beifeld*, Assistant City Solicitor, with him *John Mattioni*, Deputy City Solicitor, and *Levy Anderson*, City Solicitor, for City of Philadelphia.

*Perrin C. Hamilton*, with him *C. George Milner* and *Hamilton, Darmopray, Malloy & Milner*, for appellee.

OPINION BY JUDGE KRAMER, October 29, 1971:

This is an appeal from an Order and Opinion of the Court of Common Pleas of Philadelphia County, sustaining the appeal of St. Vladimir's Ukrainian Orthodox Church, appellee (Church), from an adjudication of the Zoning Board of Adjustment of the City of Philadelphia, intervenor (Board). The Board had dismissed the appeal of the Church arising out of the issuance of a zoning and use permit to Fun Bun, Inc., appellant (Fun Bun), for the demolition of an existing building and the erection of a quick-service restaurant. The dimensions of the subject property are one hundred feet by one hundred-fifty feet, and it is located on the northwest corner of North Fifth and Independence Streets in the City of Philadelphia. North Fifth Street is a wide (six lanes) thoroughfare, and Independence Street is a narrow, one-way street directing traffic onto North Fifth Street. Directly across Independence Street southwardly, on the opposite corner, is located the church building of the appellee, and directly behind the subject property of Fun Bun to the west is a parking lot owned and operated for church purposes by the appellee. To the north of the subject property, in the same block, are five lots. Moving northwardly, the adjoining lot contains a vacant residence building owned by Fun Bun, which lot is the subject of another zoning lawsuit pending before the Common Pleas Court of

Philadelphia concerning an application by Fun Bun for a variance, so that this adjoining lot could be used as a parking lot in conjunction with the operation of the quick-service restaurant on the subject property. The next two lots to the north are existing residential properties. The fourth lot is used for a veterinary hospital under a variance granted by the Board, and the last lot to the north is used as a funeral home, also existing under a variance granted by the Board. These last two lots are also used as residences by the operators of those two businesses. The five lots adjoining the subject property are all zoned R-4. The subject property is zoned C-2, under which a restaurant, of the type operated by Fun Bun, is a permitted use. To the east, directly across North Fifth Street from the subject property, is a triangular-shaped city block zoned C-2, which is used as a shopping center containing two super markets and a pizzaria. The entire block along North Fifth Street to the east of the subject property was rezoned from R-5 and R-9 Residential and partially C-2 Commercial to the neighborhood shopping center classification by a 1955 zoning ordinance.

The subject property was rezoned from R-4 Residential to C-2 Commercial by a zoning ordinance passed in December of 1959, before Fun Bun purchased it. One block to the south of the subject property is a gasoline station, existing under a variance granted by the Board in 1954. It is interesting to note that the church and parish house of the appellee exist under a variance granted by the Board in 1964, and the parking lot adjoining the subject premises to the west apparently exists without a city permit. It can be seen from the above description that the subject premises is surrounded on three sides by commercial or nonresidential type usages, and to the north by at least two usages which also would be considered commercial, although three lots removed.

Although the subject premises was rezoned from R-4 Residential to C-2 Commercial in 1959, a residence structure remained on the subject lot until January 23, 1970, when Fun Bun purchased the lot. On December 23, 1969, Fun Bun made application for a permit to demolish the then existing residential building, and the erection of the restaurant with accessory parking. The application was granted, and the permit was issued by the Department of Licenses and Inspections for the City of Philadelphia on December 24, 1969, and on May 8, 1970, the Church filed its appeal with the Zoning Board of Adjustment.

The record is clear that the 1959 ordinance, which rezoned the subject property to C-2 Commercial, was in accord with the then existing comprehensive plan of the City of Philadelphia, and met all of the statutory requirements. The Church, in its brief, attempted to raise in this case the issues concerning the pending variance matter before the Common Pleas Court of Philadelphia. Inasmuch as that matter is not before this Court, we are not passing upon the issues of that case in this opinion. The sole issue before this Court is whether the 1959 zoning ordinance which rezoned the subject property was "spot-zoning" and therefore invalid. We hold that it is not spot-zoning.

When no additional testimony is taken by the lower court, the test before this Court is whether the Board of Adjustment clearly abused its discretion or committed an error of law. See *Coleman v. Zoning Board of Adjustment,* 413 Pa. 103, 196 A. 2d 323 (1964).

It has long been held that one who challenges the constitutionality of a zoning ordinance has no light burden. It is settled that before a zoning ordinance can be declared unconstitutional, it must be shown that its provisions are clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare. If the validity of

the legislative judgment is fairly debatable, the legislative judgment must be allowed to control. See *Glorioso Appeal,* 413 Pa. 194, 196 A. 2d 668 (1964). We hold that the Church has not met the burden sufficiently to declare this rezoning ordinance unconstitutional. The definition of spot zoning is well settled and was set forth in the case of *Putney v. Abington Township,* 176 Pa. Superior Ct. 463, 474, 108 A. 2d 134, 140 (1954), where the court said: "Accordingly, an ordinance cannot create an 'island' of more or less restricted use within a district zoned for a different use or uses, where there are no differentiating relevant factors between the 'island' and the district. A singling out of one lot or a small area for different treatment from that accorded to similar surrounding land indistinguishable from it in character, for the economic benefit of the owner of that lot or to his economic detriment, is invalid 'spot' zoning." In the *Mulac Appeal,* 418 Pa. 207, 210, 210 A. 2d 275, 277 (1965), the Supreme Court speaks of an "island in a residentially zoned sea" and stated: "What is most determinative is whether the parcel in question is being singled out for treatment unjustifiably differing from that of similar surrounding land, thereby creating an 'island' having no relevant differences from its neighbors."

In *Cleaver v. Board of Adjustment,* 414 Pa. 367, 378-79, 200 A. 2d 408, 415 (1964), the Pennsylvania Supreme Court said: "It is very difficult to define 'spot' zoning. Zoning is a legislative division of a community into areas or districts, in each of which only certain designated uses of land and/or buildings are permitted. Generally speaking, spot zoning is the arbitrary and unreasonable classification and zoning of a small parcel of land. This small parcel of land is usually set apart or carved out of a surrounding or a large neighboring tract, with no reasonable justification for the differential zoning." In *Cleaver,* the Court took

note of the land usage on adjacent or nearby properties to determine whether the uses in question were "substantially similar to those permitted on numerous adjoining properties." Using these references as the criteria for determining whether or not the rezoning of the subject property to C-2 Commercial was spot zoning, we note that from the description given above, it was not unreasonable for the Board to conclude that the land usage and zone classification in the immediate vicinity of the subject property were indeed similar to the usage permitted on the subject property by its reclassification in 1959. We take note of the fact that neither the appellee nor any of the other residents of this area took any legal action from 1959 until 1970 when construction of this restaurant commenced. During those eleven years, no one objected to the rezoning of the subject property, not even when, as the record shows, the property was posted for sale to the public as a commercial piece of property. However, these factors are not controlling in the determination of whether or not this 1959 rezoning ordinance created spot zoning. Rather, we hold with the prevailing law as cited in this opinion that unless the facts established in the record show the subject land to be an island in a sea of some other zoning classification area, there is no spot zoning. The appellee argues that the decisions of the Supreme Court in *Schubach et ux. v. Zoning Board of Adjustment,* 440 Pa. 249, 270 A. 2d 397 (1970) and *Pincus v. Power,* 376 Pa. 175, 101 A. 2d 914 (1954), control the outcome of this case because there the Court held as spot zoning the extension of a zoning district a short distance into, or across the street from, another district. These cases are not applicable because here other properties in the R-4 Residential zone in the immediate vicinity of the subject property were already being used for non-residential purposes, and across the street and in the gen-

eral area there were existing commercial zones. The subject property cannot be considered an island.

We believe we should also point out, as did the court below, that the subject property (according to the record of this case) could not be used as an R-4 Residential property inasmuch as the only expert (appellee's witness) to testify concerning the possible use of this property stated that subject property could be used and developed for a four-unit professional office building permitted under a C-1 Commercial usage. This also is not controlling in the final determination of this matter. This case turns on the facts established in the record of this case that the subject property of Fun Bun is not so isolated as to permit its being designated an island in a sea of some other classification.

Appellee also argues that *Salvitti v. Zoning Board of Adjustment,* 429 Pa. 330, 240 A. 2d 534 (1968) controls in this matter. A careful reading of that case, however, indicates that the court first found that the property there in question was completely surrounded by another classification. We do not have that fact situation in this case.

The record indicates that the Planning Commission of Philadelphia, subsequent to the issuance of the permit in this case, changed the comprehensive plan by stating that this particular lot should be classified as R-4. Pronouncements of the Planning Commission *after the fact* are not relevant to this matter. The lower court's reference to an increased volume in traffic likewise does not control. Rather, that is a matter for those officials of the City with the responsibility to control traffic. Whether Independence Street should be one-way east or one-way west, or a two-way street, is not a matter of concern for this Court in this case. We hold that the Zoning Board of Adjustment did not abuse its discretion, nor did it commit an error of law in sustaining the action of the officials issuing the per-

mit, and therefore the order of the court below is vacated and reversed.

---

DISSENTING OPINION BY JUDGE CRUMLISH, JR.:

I dissent. I would hold that by rezoning the subject premises from R-4 to C-2 this particular lot is the object of special treatment. This unjustified[1] reclassification is invalid spot zoning.

In *Schubach v. Zoning Board of Adjustment*, 440 Pa. 249, 253, 270 A. 2d 397, 399 (1970), the Supreme Court of Pennsylvania said: ". . . Thus, singling out of one lot or a small area for different treatment from that accorded to similar surrounding land indistinguishable from it in character, for the economic benefit of the owner of that lot or to his economic detriment, is invalid 'spot' zoning. 8 E. McQuillin, Municipal Corporations, §25.83 at 224-25 (3d ed. 1965)." Appellant contends that his lot is distinguishable in character from the other lots located in the R-4 residential district for two reasons: (1) the lot can only be used for commercial purposes and, (2) the lot is indistinguishable in character from the area located across the street which is zoned C-2 Commercial. These arguments are not persuasive.

There is nothing in the record to support the contention that this lot could not be used for residential purposes. There is evidence that the best use of the property is commercial but "best use" of itself cannot justify this reclassification. Rezoning of this one lot in a residential district to C-2 would increase the value of appellant's property but at the same time decrease the value of the bordering residential lots. This is clas-

---

[1] The record is silent as to whether the comprehensive plan requires this particular lot to receive special commercial treatment. See concurring opinion of Justice ROBERTS in *Mulac Appeal*, 418 Pa. 207, 212, 210 A. 2d 275, 278-79 (1965).

sic favoritism. It is apparent to me that its passage is zoning change solely for the economic benefit of the owner. *Mulac Appeal,* 418 Pa. 207, 210 A. 2d 275 (1965); *Cleaver v. Board of Adjustment,* 414 Pa. 367, 200 A. 2d 408 (1964).

In *Mulac, supra,* at 211, it is stated: ". . . appellee's argument that the rezoning was proper because the parcel is situated in an area of mixed commercial and residential uses is not persuasive. The area in which the subject premises is located is *zoned* residential. It is true that within the confines of this large residential zone, certain commercial uses exist. All such commercial establishments exist, however, as nonconforming uses, and should such uses cease, the properties could be utilized only for residential purposes." (Emphasis in original). While *Mulac* dealt with nonconforming commercial properties, the same reasoning advanced therein would also apply to here where the only commercial uses in this residentially zoned area exist by virtue of variance and could therefore also revert to residential use.

The fact that nearby districts are zoned C-2 commercial lends no support to appellant's position. As stated in *Schubach, supra* at 254, "The appellees also place substantial emphasis upon the fact that there is a very large commercially zoned area within a few hundred feet to the north of the premises in question. It is argued that this *per se* indicates that the area is not truly residential in nature and, therefore the Pine Hill lot should also be commercially zoned. We are not persuaded by such an argument since it would mean that every border line area in the city could be subjected to such down-zoning."

Boundary lines between zoning districts must be reasonable and there is no question that the setting of general zone boundaries is within the legislative discretion. *See, Arena 'v. Norristown Borough Zoning*

*Board of Adjustment,* 2 Pa. Commonwealth Ct. 285, 276 A. 2d 838 (1970). The legislative discretion, however, is subject to judicial review to insure adequate protection and advantage for *all* property interests. This Court must step in to prevent such an abuse by the legislative branch as in the instant case where one lot is singled out for special treatment without justification. Here Fifth Street forms a natural wide boundary between the commercial and residential zones. The mere fact that the subject premises is a corner lot and not an "island" surrounded by residential properties is an argument without merit. "The test is whether a relatively small area has been treated in a manner inconsistent with the surrounding area, without justification. The 'island' is simply the most common form of inconsistency." Ryan, *Pennsylvania Zoning Law and Practice,* §3.4.9 (1970). While admittedly the premises in dispute is not sandwiched in among other differently qualified parcels thus making it an "island" in the literal sense, I believe the same reasoning which has prompted our courts to refer to "islands" applies equally to this corner property. It is the miniscule selectivity which controls and not the geographical situs.

In my judgment, appellant elected to take the legislative route when the proper procedure to effect the change of the use of a single piece of property is via a variance. The variance issue is not before us and will not be considered. I merely observe that a zoning amendment is appropriate only when there are substantial changes which would warrant the rezoning of a sizable area.[2]

The order of the court below should have been affirmed.

---

[2] For a thorough discussion of the latest developments in Pennsylvania zoning see 16 Vill. L. Rev. 507 (1971).