## Campbell *v.* Ughes, et al.

Argued October 4, 1972, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*Malcolm Campbell*, appellant, for himself.

*Daniel L. Quinlan*, for appellees.

OPINION BY JUDGE ROGERS, December 12, 1972:

This is a zoning case with a single issue and undisputed facts. It has, however, a rather extensive history which we repeat not because it justifies the order below, which we must reverse, but because it explains perhaps why the case has gone as far as it has.

In 1908 Frank Shearer and his wife acquired a 100 foot lot on North Whitehall Road, West Norriton Township, Montgomery County. In 1909 the Shearers acquired an adjoining 58 foot lot. They resided in a dwelling house on the property until the survivor of them, Mr. Shearer, died in 1967. He devised the property to Dorothy M. Ughes and her husband Joseph J. Ughes, the appellees here. At some time prior to Mr. Shearer's death North Whitehall Road had been subjected to the zoning regulations of the R-2 district of West Norriton Township, the only one pertinent here being a requirement of an 85 foot width for each lot.

Mr. and Mrs. Ughes sought the advice of real estate experts and lawyers as to the most advantageous means of disposing of their inheritance. The real estate advisor told them that they would sell to best advantage if they could subdivide, selling the house on a 73 foot lot to one buyer and the remaining 85 foot vacant lot to another buyer. To accomplish this they applied for a variance from the 85 foot requirement. The Zoning Board acquiesced, apparently on the ground that the property having been acquired as two lots in 1908-1909 could not thereafter be required by zoning to be treated as one lot. This decision was made on July 24, 1968.

On August 12, 1968 a Pauline Campbell appealed the zoning board decision to the Common Pleas Court. On August 16, 1968 the Ughes sold and conveyed the house on a 73 foot lot to Mr. and Mrs. Frank P. Vitelli.[1]  In October 1968, the Common Pleas Court reversed the Board's grant of variance, without prejudice to the right of the applicant's to seek a variance on the ground of unnecessary hardship or of unconstitutionality of the lot width requirement as applied to their property.

The instant case is the renewed application of Mr. and Mrs. Ughes, now joined by Mr. and Mrs. Vitelli, for relief from the 85 foot requirement with respect to the lot conveyed to the Vitellis. The Zoning Board concluded, upon what facts it does not state, that the 85 foot width requirement inflicted unnecessary hardship upon applicants' interests in their property, and further that the 85 foot width requirement was unconstitutional.  The court below affirmed, also concluding that the 85 foot width requirement was unconstitutional.

The sole factual basis for any variation from the width restriction here, and the only fact adduced by the appellees in support of their application, is that, of the 24 lots on the block of North Whitehall Road in which the Ughes property is located, 16 have widths of less than 85 feet.[2]  The record is devoid of any de-

---

[1] Counsel for Pauline Campbell, her husband Malcolm Campbell who is the appellant here, mailed timely notice of the appeal to then counsel for the Ughes. The Ughes say that their counsel failed to advise them that the appeal had been taken and that they did not know of it when they made the conveyance to the Vitellis. There is, however, evidence that the Ughes ignored as a "bluff" an earlier written threat to appeal made by Mr. Campbell. The Campbells own and reside in a home on North Whitehall Road.

[2] The numbers are those contained in a Board finding. A plan of the block in the record shows 25 lots fronting on North Whitehall, and that nine of these have widths in excess of 85 feet. The lots adjacent to and on either side of the Ughes property are re-

scription of the township, the neighborhood, the extent of the R-2 district, the general effect of this width requirement on the development of the township or parts thereof; and, indeed, neither the zoning ordinance nor map was made a part of the record. Furthermore, this is a clear case of mere economic hardship. The Ughes declined an offer of $20,000 for the entire property devised to them. The Vitellis paid $17,500 for the house and the 73 foot lot. The remaining lot, if salable, is estimated to be worth $7500 to $8000. Mrs. Ughes testified that they divided the property because "we wanted to get as much as we could out of the property that had been willed to us." This was a proper purpose but not one justifying a variance. *Drop v. Board of Adjustment*, 6 Pa. Commonwealth Ct. 64, 293 A. 2d 144 (1972).

In *Jacobs v. Philadelphia Zoning Board of Adjustment*, 1 Pa. Commonwealth Ct. 197, 201, 273 A. 2d 746, 748 (1971), this Court, by Judge, now Justice MANDERINO, wrote: "A variance granted by a Board of Adjustment is not something that can be given upon the whim of the Board or on a personal basis to an individual. It must strictly meet the requirements of the law, particularly because a variance by definition is the grant of that which is in 'violation' of the zoning ordinance. It is allowed only because certain pieces of property within a zoning district may be unique in some way such as location, topography or size and the zoning law which causes no injustice in most of the zoning district would result in an injustice or a 'taking of property'." We find nothing in this record establishing that the Ughes property as devised to them was affected by the lot width requirement differently from

spectively 100 feet and 130 feet wide. The two lots once removed on either side of the Ughes lot are respectively 114 feet and 201 feet wide.

any other lot on North Whitehall Road exceeding the minimum requirement or from any other such lot in the R-2 district of West Norriton Township. The appellees did not show that the width requirement uniquely affected them by a count of other nonconforming lots on the block; especially where, as appellant forcefully argues, the appellees' property is located in the same part of a long block as are other larger and conforming lots.

The constitutional argument also fails. As the courts of Pennsylvania have repeatedly held, one asserting the invalidity of a zoning restriction has the heavy duty of proving the regulation clearly arbitrary and unreasonable and having no substantial relationship to the public health, safety, morals or general welfare. If the validity of the legislative judgment as to whether such relationship exists is fairly debatable, the legislative judgment must prevail. *Schiller-Pfeiffer v. Upper Southampton Township Board of Adjustment,* 1 Pa. Commonwealth Ct. 588, 593, 276 A. 2d 334, 337 (1971), and cases there cited. As stated, the only evidence here offered is that there are other lots on this block of North Whitehall Road of widths less than 85 feet. This showing standing alone did not prove the 85 feet width arbitrary or unreasonable or as lacking in relationship to the health, safety or general welfare of West Norriton Township. Density requirements have been universally upheld, in the absence of evidence that they have a private purpose of accommodating the purely aesthetic or exclusionary interests of persons presently resident at the expense of those seeking to reside in the municipality. *Dunlap Appeal,* 370 Pa. 31, 87 A. 2d 299 (1952); *Volpe Appeal,* 384 Pa. 374, 121 A. 2d 97 (1956); *Bilbar Construction Co. v. Easttown Township Board of Adjustment,* 393 Pa. 62, 141 A. 2d 851 (1958); *Robert Louis Corp. v. Board of Adjust-*

*ment,* 1 Pa. Commonwealth Ct. 292, 274 A. 2d 551 (1971). *Schmalz v. Buckingham Twp. Zoning Board,* 389 Pa. 295, 132 A. 2d 233 (1957), holding the requirement of a 50 foot front yard in a sparsely populated, agricultural area unreasonable, is obviously not authority for invalidating an 85 foot width standard on a developed residential street.

Reversed.

CONCURRING OPINION BY JUDGE CRUMLISH:

For reasons different than those spoken by the majority, I concur in the result.

I acknowledge our decisions and those of the Supreme Court which hold that one asserting the invalidity of a zoning restriction has the *heavy duty* of proving that the regulation is clearly arbitrary and unreasonable and that it has no substantial relationship to the public health, safety, morals or general welfare. *Bilbar Construction Company v. Easttown Township Board of Adjustment,* 393 Pa. 62, 141 A. 2d 851 (1958); *Bidwell, et al. v. Zoning Board of Adjustment,* 4 Pa. Commonwealth Ct. 327, 286 A. 2d 487 (1972); *Nagorny, et al. v. Zoning Hearing Board and Kaiserman, et al.,* 4 Pa. Commonwealth Ct. 133, 286 A. 2d 493 (1972); *St. Vladimir's Ukrainian Orthodox Church v. Fun Bun, Inc., and Zoning Board of Adjustment,* 3 Pa. Commonwealth Ct. 394, 283 A. 2d 308 (1971).

However, zoning ordinances do involve governmental restrictions on a landowner's constitutionally guaranteed right to use his property in ways he might see fit and proper, *National Land & Investment Co. v. Easttown Township Board of Adjustment,* 419 Pa. 504, 522, 215 A. 2d 597 (1965), and the justification in governmental restriction must be found in some aspect of the police power, asserted for the public welfare. *Euclid et al. v. Ambler Realty Co.,* 272 U.S. 365, 386

(1926). I have grave doubts about the beneficial effect on the welfare where a zoning ordinance restricts a district in which 16 of 24 lots on the block in question are classified as *"non-conforming uses."*

The majority in dismissing the control of *Schmalz v. Buckingham Township Zoning Board,* 389 Pa. 295, 132 A. 2d 233 (1957), on the constitutionality issue asserts that the Supreme Court's invalidation of a 50 foot front yard requirement in an agricultural area in *Schmalz* is "obviously not authority for invalidating an 85 foot width standard on a developed residential street."

As I see it, the significance of *Schmalz* is not in a similarity of factual situations. The true import of *Schmalz* is that the reasonableness of a zoning ordinance must be determined on the basis of its application to present as well as to projected factual postures. 389 Pa. 295, 302.

In considering the 85 foot frontage requirement as applied to conditions *now existent* on North Whitehall Road, we find that 16 of 24 lots have less than the required 85 feet front. I find it difficult to accept, at this point in time, the ordinance's reasonable relationship to the health, safety or morals of this locality.

I recognize that other jurisdictions have invalidated zoning ordinances where their effect was to create a number of nonconforming uses in the area. *Du Page County v. Halkier et al.,* 1 Ill. 2d 491, 115 N.E. 2d 635 (1953), *Hitchman et al. v. Oakland Twp. et al.,* 329 Mich. 331, 45 N.W. 2d 306 (1951). I agree with this position and feel that in the proper case, a zoning restriction which has the effect of creating wholesale nonconforming uses is subject to a valid constitutional attack.

However, appellee herein has failed to meet his burden. As the majority aptly points out, the only evi-

dence offered by appellee in support of his attack on the constitutionality of the ordinance is that 16 of 24 lots on the block have widths of less than 85 feet. Hardship will result by the enforcement of this frontage requirement, but the hardship herein described, economic or otherwise, is not sufficiently probative to show that the zoning regulation is "clearly arbitrary and unreasonable and having no substantial relationship to the public health, safety, morals or general welfare."

Detailed evidence consisting of the township's description, such as the effect or lack of effect of the width requirement, the extent of R-2 district, and other germane factual presentation is wholly lacking.

I would be impressed by the pronouncement of a witness that 66% of the lots on the block do not conform to the zoning ordinance and hence doubts as to the validity of ordinance are in order, however, that statement alone does not clearly and plainly show that the ordinance has no substantial relationship to the public health, safety, morals or general welfare.

Judge KRAMER joins in this Opinion.