J-A02014-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
:           PENNSYLVANIA
:
v.                  :
:
:
ALEXANDER BERRIOS         :
:
Appellant          :    No. 818 MDA 2018

Appeal from the Judgment of Sentence April 17, 2018
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0004298-2017

BEFORE:  LAZARUS, J., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY DUBOW, J.:          **FILED: MARCH 8, 2019**

Appellant, Alexander Berrios, appeals from the Judgment of Sentence entered in the Berks County Court of Common Pleas on April 17, 2018, following his conviction of Persons Not to Possess Firearms.  On appeal, Appellant challenges the trial court's denial of his Motion to Suppress, as well as the sufficiency of the evidence in support of his conviction.  After careful review, we affirm.

The facts and procedural history are as follows.  On August 10, 2017, police charged Appellant with Persons Not to Possess Firearms, Tampering with or Fabricating Physical Evidence, Possession of a Controlled Substance, and Possession of Drug Paraphernalia,[1] after Pennsylvania Board of Probation and Parole Officer Christopher Hall and Reading Police Officer Vincent Leazier

---

[1] 18 Pa.C.S. §§ 6105(a)(1) and 4910(1); and 35 P.S. §§ 780-113(a)(16) and 780-113(a)(32), respectively.

visited Appellant's apartment for a probation "home check" and found, *inter alia*, a loaded firearm. Appellant also admitted to having ingested a large quantity of illegal drugs just prior to inviting the officers into his Apartment.

On November 8, 2017, Appellant filed an Omnibus Pretrial Motion seeking the suppression of evidence and Appellant's statement to Officers Hall and Leazier. In particular, and relevant to the instant appeal, Appellant alleged that his heroin overdose immediately before Officers Hall and Leazier interrogated him rendered his statement to them involuntary. He, thus, sought the suppression of the statement that "I didn't pay anything, I traded for it," in response to Officer Leazier asking him how much he paid for the firearm. Motion, 11/8/17, at ¶ 6(g).

The court held a hearing on Appellant's Motion, at which only Officers Hall and Leazier testified.[2] Following the hearing, the trial court granted in part and denied in part Appellant's Motion. Relevantly, the court denied Appellant's Motion to Suppress Appellant's statement to the officers.[3]

Appellant's one-day jury trial commenced on April 17, 2018. Officers Hall's and Leazier's testimony established the following facts. When the officers arrived at Appellant's apartment building, Officer Hall called Appellant on the phone, but Appellant did not initially respond. As Officers Hall and

---

[2] At the commencement of the hearing, Appellant informed the court that he no longer sought to suppress the physical evidence seized by police.

[3] The court did, however, dismiss the charge of Tampering with or Fabricating Physical Evidence.

Leazier started to leave the premises, Appellant called out from a second-floor window and announced that he was home. Appellant then proceeded to open the front door and let the officers into the apartment building. The three men ascended to the second floor and entered Apartment 2F. There were no other people in Apartment 2F at this time.

Appellant showed Officers Hall and Leazier his bedroom, which was in the middle of the apartment. Officer Leazier described Appellant as being "calm, cooperative, friendly, [and] talkative." N.T. Trial, 4/17/18, at 75.

As the officers spoke with Appellant inside his bedroom, they noticed a bullet sitting atop a mini-fridge. Officer Leazier informed Appellant that he had seen the bullet, and that the possession of which was a violation of Appellant's parole. At that point, Officer Hall asked Appellant for permission to search, and Appellant consented, stating "you're going to do what you have to do anyway." N.T. Trial at 77. *See also* N.T. Suppression, 12/18/17, at 9.

Appellant then became defensive, uncooperative, and verbally combative, and informed Officer Leazier that he no longer wanted to speak with him. Appellant also became pale, and began sweating and rocking back and forth in his chair. Appellant's face was flushed and he was talking loudly. Notwithstanding, Officer Leazier testified that Appellant answered the officers' questions clearly and without difficulty, and the officers were able to converse with Appellant. *See* N.T. Trial at 54-85.

Appellant then informed Officer Leazier that he felt sick, and the officer escorted Appellant to the bathroom. In the bathroom, Appellant dry heaved

and reiterated that he continued to feel ill. While Appellant and Officer Leazier were in the bathroom, Officer Hall continued to search the premises. Officer Hall found a loaded Smith & Wesson firearm inside of a box in Appellant's bedroom closet. He told Officer Leazier that he had found a firearm, which prompted Officer Leazier to handcuff Appellant and read him his *Miranda* rights.

Just prior to receiving his *Miranda* warning, Appellant informed the officers that he was sick to his stomach because he had overdosed by swallowing drugs before the officers entered his apartment.

The officers then questioned Appellant about the firearm. Although he initially denied owning it, Appellant ultimately admitted that he "had traded for it." N.T. Trial at 80, 92, 132. The officers testified that Appellant was still coherent and able to converse with them and answer their questions. *Id.* at 109, 133. Officer Leazier testified that, at the time, he did not believe Appellant was overdosing, but rather that Appellant's behavior and demeanor were consistent with being angry, scared, and nervous. *Id.* at 96.

Officer Leazier called an ambulance, which transported Appellant to the hospital. Doctors there provided Appellant with treatment to counteract the drugs he had ingested and informed Officer Leazier that Appellant exhibited symptoms of an acute overdose consistent with heroin.

Appellant and the Commonwealth stipulated that Appellant has a prior Possession With Intent to Deliver conviction that prohibits him from

possessing a firearm in Pennsylvania. Appellant did not present any witnesses or testify in his own defense.

Following Appellant's trial, a jury convicted him of Persons Not to Possess Firearms. The Commonwealth withdrew the remaining charges. That same day, the trial court sentenced Appellant to serve a term of two to five years' incarceration.

On April 27, 2018, Appellant filed a Post-Sentence Motion in which he challenged the denial of his Motion to Suppress, and the weight and sufficiency of the Commonwealth's evidence in support of his conviction. The trial court denied Appellant's Motion without a hearing on May 1, 2018.

This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following three issues on appeal:

1. Whether the trial court erred in denying Appellant's Omnibus Pre-trial Motion to Suppress incriminating statements made after Appellant was [*M*]*irandized* even though the waiver was involuntary due to an acute drug overdose.

2. Whether [the] Commonwealth presented sufficient evidence to establish beyond a reasonable doubt that Appellant knowingly possessed the firearm found in his apartment.

3. Whether the trial court abused its discretion when it permitted a guilty verdict that was against the weight of the evidence, especially since the prosecution never pursued investigatory leads.[4]

Appellant's Brief at 8-9.

_____

[4] Appellant has acknowledged abandoning this issue by not addressing it in the argument section of his Brief. *See* Appellant's Brief at 9 n.1.

In his first issue, Appellant challenges the trial court's pre-trial Order denying his Motion to Suppress.

In reviewing the denial of a Motion to Suppress, we are limited to considering only the Commonwealth's evidence and "so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." *Commonwealth v. McCoy*, 154 A.3d 813, 815-16 (Pa. Super. 2017). Where the testimony and other evidence supports the suppression court's findings of fact, we are bound by them and "may reverse only if the court erred in reaching its legal conclusions based upon the facts." *Id.* at 816. It is within the exclusive province of the suppression court to "pass on the credibility of witnesses and determine the weight to be given to their testimony." *Id.*

"The scope of review from a suppression ruling is limited to the evidentiary record created at the suppression hearing." *Commonwealth v. Neal*, 151 A.3d 1068, 1071 (Pa. Super. 2016) (citing *In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013)). This Court will not disturb a suppression court's credibility determination absent a clear and manifest error. *Commonwealth v. Camacho*, 625 A.2d 1242, 1245 (Pa. Super. 1993).

Appellant claims that the court erred in not suppressing his admission to Officers Hall and Leazier that he had traded for the firearm the officers found in his bedroom. He avers that the court should have suppressed this statement because his *Miranda* waiver to the officers "was not voluntary because he was under the heavy influence of heroin, nor was his waiver

knowing because he could not comprehend his legal rights or consequences." Appellant's Brief at 19; *see also id.* at 24-27. In support of his claim that the trial court erred, Appellant argues that: (1) the court failed to consider that the officers deprived Appellant of medical attention; (2) his "panic for his life . . . drained him of his ability to resist police interrogation;" (3) the court failed to consider the totality of the circumstances; (4) the court held Appellant's self-induced overdose against him; and (5) the court did not give enough weight to Appellant's intoxication when considering whether he was capable of waiving his rights. *See id.* at 28-41.

The Honorable M. Theresa Johnson, sitting as the trial court, has authored a comprehensive, thorough, and well-reasoned Opinion, citing to the record and relevant case law in addressing Appellant's challenge to the court's denial of his Motion to Suppress. The trial court also addressed this issue in its January 19, 2018 Findings of Fact and Conclusions of Law ("FFCL"). After a careful review of the parties' arguments and the record, we affirm on the basis of the trial court's Opinion and its FFCL. *See* FFCL, 1/19/18, at 1-6 (concluding that the totality of the circumstances indicate that Appellant's statement was voluntary and free from coercion, including, *inter alia*, (1) the brief duration of the interrogation; (2) the officers did not physically abuse or threaten Appellant; (3) the officers did not detain Appellant prior to his confession; (4) there is no evidence that the officers were anything other than polite and respectful to Appellant; (5) the officers assisted Appellant when he was ill, called an ambulance for him, and accompanied him to the hospital;

- 7 -

and (6) there is no evidence that Appellant did not understand his **Miranda** warnings). **See also** Trial. Ct. Op., 7/20/18, at 4-7 (concluding that the Commonwealth established by a preponderance of the evidence that Appellant had "sufficient cognitive awareness" to understand the **Miranda** rights and voluntarily chose to waive them because (1) Appellant communicated clearly before and after the officers administered the **Miranda** warnings; and (2) the officers credibly testified that Appellant did not exhibit any signs that he did not understand the **Miranda** warnings.).

In his second issue, Appellant claims that the Commonwealth's evidence was insufficient to prove that he knowingly possessed a firearm. Appellant's Brief at 41.

"A claim challenging the sufficiency of the evidence is a question of law." **Commonwealth v. Widmer**, 744 A.2d 745, 751 (Pa. 2000). "We review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." **Commonwealth v. Miller**, 172 A.3d 632, 640 (Pa. Super. 2017) (internal quotation marks and citations omitted). "Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence." **Id.** "In conducting this review, the appellate court

may not weigh the evidence and substitute its judgment for the fact-finder." *Id.*

The jury convicted Appellant of the offense of Persons Not to Possess Firearms. Section 6105, Persons Not to Possess Firearms provides, in relevant part, that "[a] person who has been convicted of an offense enumerated in subsection (b) . . . shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth." 18 Pa.C.S. § 6105(a)(1).

Appellant specifically challenges the evidence supporting the possession element of this offense. Appellant argues that the Commonwealth failed to present sufficient circumstantial evidence to establish that Appellant constructively possessed the firearm. Appellant's Brief at 43. Thus, we limit our analysis to this element only.

This Court has held that "[p]ossession can be found by proving actual possession, constructive possession, or joint constructive possession." *Commonwealth v. Heidler*, 741 A.2d 213, 215 (Pa. Super. 1999). Where a defendant is not in actual possession of the recovered firearm, the Commonwealth must establish that the defendant had constructive possession to support the conviction. *Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa. Super. 2013). "Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement." *Id.* (citation and quotation omitted). "We have defined constructive possession as conscious dominion." *Id.* (citation and quotation omitted). "We subsequently

defined conscious dominion as the power to control the contraband and the intent to exercise that control." *Id.* (citation and quotation omitted). "To aid application, we have held that constructive possession may be established by the totality of the circumstances." *Id.* (citation and quotation omitted).

It is well established that, "[a]s with any other element of a crime, constructive possession may be proven by circumstantial evidence." *Commonwealth v. Haskins*, 677 A.2d 328, 330 (Pa. Super. 1996). In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the weapon. *See*, *e.g.*, *Commonwealth v. Davis*, 743 A.2d 946, 953-54 (Pa. Super. 1999) (holding evidence was sufficient to prove constructive possession over drugs found in common areas of apartment where defendant entered apartment using his own key, possessed $800 in cash on his person, and police recovered defendant's identification badge, size-appropriate clothing, and firearms from a bedroom).

It is insufficient to infer "dominion and control" when the Commonwealth only provides evidence of the defendant's presence. *See Commonwealth v. Valette*, 613 A.2d 548, 551 (Pa. 1992) (holding mere presence at a place where contraband is found or secreted is insufficient standing alone to prove constructive possession). Moreover, if the only inference that the fact-finder can make from the facts is a suspicion of possession, the Commonwealth has failed to prove constructive possession. *Id.* "It is well settled that facts giving

rise to mere 'association,' 'suspicion' or 'conjecture,' will not make out a case of constructive possession." *Id.*

Here, the trial court concluded that the evidence was sufficient to support Appellant's conviction for Persons Not to Possess Firearms. Trial Ct. Op. at 9. After reviewing the record and case law, we agree with the trial court's conclusion.

The Commonwealth presented uncontradicted testimony that Appellant escorted the officers to his apartment and identified to them the location of his bedroom and his belongings. The officers found the firearm, and a bullet of matching caliber, in the bedroom that Appellant indicated was his. Moreover, Appellant acknowledged that the firearm was his when he admitted to the officers that he had traded for it. Although Appellant argues in his brief that the firearm could have belonged to his cousin or his brother, both of whom he alleges lived, at one time or another, in the apartment with Appellant,[5] there is no evidence in the record to support this contention.

From this evidence, it was reasonable for the jury to infer that Appellant exercised dominion and control over the firearm. Accordingly, we conclude that the Commonwealth presented sufficient circumstantial evidence to establish that Appellant constructively possessed the firearm. Appellant is not, therefore, entitled to relief on this claim.

Judgment of Sentence affirmed.

_____

[5] *See* Appellant's Brief at 43.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 03/08/2019

COMMONWEALTH OF PENNSYLVANIA    :    IN THE COURT OF COMMON PLEAS
                                        :    OF BERKS COUNTY, PENNSYLVANIA
                                        :    CRIMINAL DIVISION

VS.    :

                                        :    No. CP-06-CR-0004298-2017

ALEXANDER BERRIOS    :    Assigned to: Judge M. Theresa Johnson

Lauren Otero, Esquire
*Attorney for Appellant*

Alisa R. Hobart, Esquire
*Attorney for the Commonwealth/Appellee*

| Memorandum Opinion | July 20, 2018 | M. Theresa Johnson, J. |
| --- | --- | --- |

## PROCEDURAL HISTORY

The defendant in the above-captioned case, Alexander Berrios (hereinafter referred to as "Appellant"), was charged with Persons not to Possess, Use, Manufacture, Control, Sell or Transfer Firearms,[1] Tampering with or Fabricating Physical Evidence,[2] Possession of a Controlled Substance[3] and Possession of Drug Paraphernalia[4] arising out of an incident alleged to have occurred on August 10, 2017. On November 8, 2017, Appellant, by and through counsel, filed an Omnibus Pretrial Motion seeking the suppression of evidence and statements as well as habeas corpus relief (hereinafter referred to as "Appellant's Motion"). A hearing was held on December 18, 2017, regarding Appellant's Motion. On January 19, 2018, Appellant's Motion was granted in part and denied in part. As a result, the charge of Tampering with or Fabricating Physical Evidence was dismissed.

On April 17, 2018, a jury found Appellant guilty of Persons not to Possess, Use, Manufacture, Control, Sell or Transfer Firearms. Notes of Testimony, Jury Trial, April 17, 2018

---

[1] 18 Pa.C.S.A. §6105(a)(1).
[2] 18 Pa.C.S.A. §4910(1).
[3] 35 P.S. §780-113(a)(16).
[4] 35 P.S. §780-113(a)(32).

(hereinafter referred to as "N.T.") at 171. The Commonwealth withdrew the remaining charges. N.T. at 174. This Court imposed a sentence on Appellant of not less than five (5) years nor more than ten (10) years in a State Correctional Facility. N.T. at 179. Appellant was given a credit of two hundred fifty (250) days for time served. *Id.* On April 27, 2018, Appellant filed a Post-Sentence Motion for Relief which this Court denied by order dated May 1, 2018.

On May 15, 2018, Appellant applied for leave to appeal *in forma pauperis* and filed a Notice of Appeal to the Superior Court of Pennsylvania from this Court's order of May 1, 2018, denying Appellant's Post-Sentence Motion. On May 16, 2018, Appellant was ordered to file a Concise Statement of Matters Complained of on Appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). On May 21, 2018, Appellant filed a Concise Statement of Errors Complained of on Appeal raising the following issues: 1) this Court erred when it denied Appellant's Motion regarding the suppression of Appellant's statements; 2) there was insufficient evidence to support the jury's verdict; and 3) the jury's verdict was against the weight of the evidence.

## DISCUSSION

### Statement of Facts

On August 10, 2017, Agent Christopher Hall of the Pennsylvania Board of Probation and Parole (hereinafter referred to as "Agent Hall") and Officer Vincent Leazier of the Reading Police Department (hereinafter referred to as "Officer Leazier") (hereinafter collectively referred to as "the Officers") traveled to Appellant's home located at 1007 Penn Street, Apartment 2F, Reading, Berks County, Pennsylvania (hereinafter referred to as "Appellant's Residence"), for a "home check." N.T. at 73, 127; Notes of Testimony, Omnibus Pretrial Hearing, December 18, 2017 (hereinafter referred to as "O.P.T.") at 5-7, 15. Upon arrival, the Officers attempted to

BERKS COUNTY, PA
2018 JUL 20 PM 4:08
CLERK OF COURTS

contact Appellant but there was no response. N.T. at 73, 128; O.P.T. at 8, 15. As the Officers were leaving, Appellant yelled out from a second floor window and permitted the Officers to enter through the bottom door of the building containing Appellant's Residence. N.T. at 73, 128; O.P.T. at 8, 15. Appellant escorted the Officers to Appellant's Residence located on the second floor of the building. N.T. at 74, 128; O.P.T. at 8, 16. Appellant identified his bedroom to the Officers and the location of his belongings. N.T. at 75; O.P.T. at 8, 16. At this point, Appellant was described as "calm, cooperative, friendly [and] talkative" by Officer Leazier. N.T. at 75.

As the Officers were speaking to Appellant inside of his bedroom, they noticed a bullet sitting on a mini fridge.[5] N.T. at 75, 93, 129; O.P.T. at 9, 17. The presence of a bullet in Appellant's bedroom was a violation of his parole. O.P.T. at 9. Once Officer Leazier informed Appellant that he noticed the bullet, Appellant became defensive, uncooperative and upset. N.T. at 83-84. Appellant also became pale, extremely nervous and was sweating and rocking back and forth in his chair. N.T. at 83-85, 96, 132, 136; O.P.T. at 12, 13, 17, 18, 24, 26. Appellant's face was flush and he was talking loudly. N.T. at 84, 85, 94, 136. Although Appellant was exhibiting these physical symptoms, he was able to clearly communicate with the Officers. N.T. at 84. Appellant informed Officer Leazier that he was sick and he was escorted to the bathroom. N.T. at 94, 97, 133; O.P.T. at 10, 20.

While in the bathroom, Appellant was dry-heaving over the toilet and told Officer Leazier he did not feel well. N.T. at 95. Agent Hall searched Appellant's bedroom and located a loaded Smith & Wesson firearm inside of a box in the bedroom closet. N.T. at 77-81, 97, 129; O.P.T. at 9-10, 23. Agent Hall alerted Officer Leazier to the presence of a firearm which prompted Officer Leazier to handcuff Appellant and read him his *Miranda* warnings. N.T. at 78, 80, 93, 97, 131; O.P.T. at 11, 18. Appellant informed the Officers just prior to receiving

---

[5] The bullet on the mini fridge was compatible with the firearm. N.T. at 81; O.P.T. at 10.

3

*Miranda* warnings that he was sick to his stomach and was having an overdose because he had swallowed drugs before they entered the apartment. N.T. at 85, 94, 136; O.P.T. at 11, 12, 13, 14, 17, 26. Appellant was then questioned about the firearm and, after initially denying ownership, admitted he traded for it. N.T. at 80, 92, 132; O.P.T. at 11, 19; O.P.T. at 11. Appellant was coherent and able to converse with the Officers and answer their questions. N.T. at 109, 133; O.P.T. at 18. Officer Leazier testified that, based on his experience, the physical symptoms exhibited by Appellant were consistent with a feeling of anger or fear and not of an overdose. N.T. at 96.

During the Offcers' interaction with Appellant, Officer Leazier called for an ambulance. N.T. at 99; O.P.T. at 19-20. Appellant was taken by ambulance to the hospital and was visited by Officer Leazier. N.T. at 85, 99; O.P.T. at 20. While at the hospital, Appellant received medical treatment to counteract the drugs. N.T. at 102; O.P.T. at 20. Officer Leazier was informed by hospital personnel that Appellant exhibited the effects of an acute overdose consistent with heroin. O.P.T. at 20.

Appellant, by and through counsel, and the Commonwealth stipulated that Appellant has a prior conviction for Possession with Intent to Deliver which prohibits him from possessing a firearm in the Commonwealth of Pennsylvania. N.T. at 139-140.

### Suppression of Appellant's Statements

"Statements made during custodial interrogation are presumptively involuntary, unless the accused is first advised of her *Miranda* rights." *Commonwealth v. Kunkle*, 79 A.3d 1173, 1179 (Pa. Super. 2013) (citation omitted). "It is the Commonwealth's burden to establish whether a defendant knowingly and voluntarily waived his *Miranda* rights. In order to do so, the Commonwealth must demonstrate that the proper warnings were given, and that the accused

4

manifested an understanding of these warnings." *Commonwealth v. Cohen*, 53 A.3d 882, 885-886 (Pa. Super. 2012) (citation and alteration omitted).

"In considering whether a defendant has validly waived his *Miranda* rights, the trial court engages in a two-pronged analysis: (1) whether the waiver was voluntary, in the sense that the defendant's choice was not the end result of governmental pressure; and (2) whether the waiver was knowing and intelligent, in the sense that it was made with full comprehension of both the nature of the right being abandoned and the consequence of that choice." *Kunkle*, 79 A.3d at 1180 (alterations and citation omitted). "The test for determining the voluntariness, and thus the admissibility, of an accused's statement is the totality of the circumstances surrounding the statement." *Commonwealth v. Bryant*, 67 A.3d 716, 724 (Pa. 2013) (citation omitted).

The following factors "should be considered under a totality of the circumstances test to determine whether a statement was freely and voluntarily made: the duration and means of interrogation, including whether questioning was repeated, prolonged, or accompanied by physical abuse or threats thereof; the length of the accused's detention prior to the confession; whether the accused was advised of his or her constitutional rights; the attitude exhibited by the police during the interrogation; the accused's physical and psychological state, including whether he or she was injured, ill, drugged, or intoxicated; the conditions attendant to the detention, including whether the accused was deprived of food, drink, sleep, or medical attention; the age, education, and intelligence of the accused; the experience of the accused with law enforcement and the criminal justice system; and any other factors which might serve to drain one's powers of resistance to suggestion and coercion." *Id.* (citation omitted).

"The question of voluntariness is not whether the defendant would have confessed without interrogation, but whether the interrogation was so manipulative or coercive that it deprived the

5

defendant of his ability to make a free and unconstrained decision to confess." *Commonwealth v. Nester*, 709 A.2d 879, 882 (Pa. 1998) (citation omitted).

"The [Pennsylvania] Supreme Court, has, on a number of occasions, considered the legality of confessions obtained when the accused is suffering from medical infirmities and has found voluntariness based solely on the credible testimony of the interrogating officer." *Commonwealth v. Hunt*, 298 A.2d 690, 693 (Pa. Super. 1979). In those cases, the use of narcotics or alcohol at the time of questioning was a factor for the court to consider but was not determinative and did not automatically invalidate an incriminatory statement. *Commonwealth v. Cornish*, 370 A.2d 291, 297 (Pa. 1977) (use of narcotics the evening before appellant's arrest and questioning did not invalidate appellant's statement); *See also Commonwealth v. Smith*, 291 A.2d 103 (Pa. 1972) (although appellant was nervous, shaky and appeared to have been drinking, detectives testified that he was alert, responsive and understood the questions asked of him; confession was found to be voluntary); *Commonwealth v. Moore*, 311 A.2d 620 (Pa. 1973) (appellant experienced heroin withdrawal symptoms but was "alert, lucid and capable of making a valid statement"; appellant's confession was voluntary); *Commonwealth v. Cruz*, 71 A.3d 998 (Pa. Super. 2013) (although appellant appeared intoxicated, his statement was voluntary as he "gave no indication that he was mentally incapable of understanding the situation or the questions asked of him [and he] responded quickly and appropriately, and volunteered additional information without further prompting").

The court must determine "whether [the defendant] had sufficient mental capacity at the time of giving his statement to know what he was saying and to have voluntarily intended to say it." *Id.* (citation omitted). "[W]hen evidence of impairment is present, it is for the suppression court to decide whether the Commonwealth has established by a preponderance of the evidence

6

that the suspect nonetheless had sufficient cognitive awareness to understand the *Miranda* warnings and to choose to waive his rights." *Commonwealth v. Ventura*, 975 A.2d 1128, 1 138 (Pa. Super. 2009) (citation omitted).

In the case at bar, Appellant claims that the "police overcame Appellant's free will by interrogating him during Appellant's obvious and deadly drug overdose without rendering any medical aid to Appellant." On January 19, 2018, this Court denied Appellant's Motion to suppress statements he made regarding his possession of the firearm and found that they were voluntarily made. In addition to this court's analysis contained within the Findings of Fact and Conclusions of Law in Disposition of Defendant's Omnibus Pretrial Motion, this court provides the following additional discussion.

As set forth above, Appellant exhibited various physical symptoms of distress after the bullet was located on his mini fridge. However, there was never any indication that Appellant did not understand his *Miranda* warnings. Appellant was able to clearly communicate with the Officers both before and after the administration of *Miranda* warnings as well as converse with them and answer their questions. It was clear to this court at the time of the suppression hearing and now upon an additional review of the facts of this case that the Commonwealth established by a preponderance of the evidence that Appellant had "sufficient cognitive awareness" to understand the *Miranda* warnings and chose to waive those rights. Therefore, Appellant is not entitled to relief.

### Sufficiency of the Evidence – Persons not to Possess a Firearm

When reviewing a challenge to the sufficiency of the evidence supporting a defendant's conviction, an appellate court is required to evaluate the record "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from

7

the evidence." *Commonwealth v. Rahman*, 75 A.3d 497, 500 (Pa. Super. 2013) (citation omitted).

> The test for determining the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth as the verdict winner and drawing all proper inferences favorable to the Commonwealth, the jury could have determined that all of the elements of the crime have been established beyond a reasonable doubt. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. The facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence, but the question of any doubt is for the jury unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. *Commonwealth v. Smith*, 848 A.2d 973, 977 (Pa. Super. 2004) (citation omitted).

An appellate court "may not substitute [its] judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld." *Rahman*, 75 A.3d at 501.

"In order to obtain a conviction under 18 Pa.C.S. § 6105, the Commonwealth must prove beyond a reasonable doubt that the defendant possessed a firearm and that he was convicted of an enumerated offense that prohibits him from possessing, using, controlling, or transferring a firearm." *Commonwealth v. Thomas*, 988 A.2d 669, 670 (Pa. Super. 2009). The "[i]llegal possession of a firearm may be established by constructive possession." *Commonwealth v. McClellan*, 178 A.3d 874, 878 (Pa. Super. 2018).

8

When contraband is not found on the defendant's person, the Commonwealth must establish constructive possession, that is, the power to control the contraband and the intent to exercise that control. The fact that another person may also have control and access does not eliminate the defendant's constructive possession. As with any other element of a crime, constructive possession may be proven by circumstantial evidence. The requisite knowledge and intent may be inferred from the totality of the circumstances. *Id.* (quotation marks, citations and ellipsis omitted).

"Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not." *Commonwealth v. Mudrick*, 507 A.2d 1212, 1213 (Pa. 1986).

In the case at bar, Appellant claims that the Commonwealth failed to present sufficient evidence that Appellant possessed the firearm as it was not on his person, the bedroom contained two beds and the box containing the firearm was not linked to Appellant. However, the evidence presented by the Commonwealth demonstrated that Appellant was in constructive possession of the firearm and was prohibited from possessing that firearm. After the Officers were escorted to Appellant's Residence on the second floor of the building, Appellant identified his bedroom and the location of his belongings. The firearm was located in this same bedroom that Appellant had identified as his. Furthermore, Appellant admitted that he had traded for the firearm. Therefore, although the firearm was not located on Appellant, the evidence, accepted in the light most favorable to the Commonwealth, established that Appellant had both the power and intent to control the firearm. The jury could have and did determine that all the elements of Persons not to Possess a Firearm had been established beyond a reasonable doubt. Appellant is not entitled to relief.

9

## Weight of the Evidence

The Appellant claims that his conviction was against the weight of the evidence as the firearm was not found on Appellant's person, was located in a room with two beds and in a box with no link to Appellant.

"A true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." *Commonwealth v. Charlton*, 902 A.2d 554, 561 (Pa. Super. 2006) (citation omitted).

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim. *Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003) (citations omitted).

In the case at bar, Appellant claims that the jury's verdict was against the weight of the evidence. However, as set forth above in this Court's analysis of the sufficiency of the evidence, the verdict was not contrary to the evidence as the jury was presented with a case upon which to convict the Appellant. The jury's verdict indicates that they evaluated the evidence, determined the credibility of witnesses and, when assessing the weight of the evidence, believed the evidence presented by the prosecution and rendered a guilty verdict. Therefore, the verdict was consistent with the evidence presented and did not shock anyone's sense of justice.

10

For the foregoing reasons, we respectfully request that Appellant's Appeal be DENIED and his sentence AFFIRMED.

11

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS
                                     : OF BERKS COUNTY, PENNSYLVANIA
                                     : CRIMINAL DIVISION
                VS.            : :
                                     : No. CP-06-CR-0004298-2017
                                   :
ALEXANDER BERRIOS         : Assigned to: Judge M. Theresa Johnson

## FINDINGS OF FACT AND CONCLUSIONS OF LAW IN DISPOSITION OF DEFENDANT'S OMNIBUS PRETRIAL MOTION

### PROCEDURAL HISTORY

The defendant in the above-captioned case, Alexander Berrios (hereinafter referred to as "Defendant"), was charged with Persons not to Possess, Use, Manufacture, Control, Sell or Transfer Firearms,[1] Tampering with or Fabricating Physical Evidence,[2] Possession of a Controlled Substance[3] and Possession of Drug Paraphernalia[4] arising out of an incident alleged to have occurred on August 10, 2017. On November 8, 2017, Defendant, by and through counsel, filed an Omnibus Pretrial Motion seeking the suppression of evidence and statements as well as habeas corpus relief (hereinafter referred to as "Defendant's Motion"). A hearing was held on December 18, 2017, regarding Defendant's Motion. At that time, Officer Christopher Hall of Pennsylvania Probation and Parole (hereinafter referred to as "Officer Hall") and Officer Vincent Leazier (hereinafter referred to as "Officer Leazier") of the Reading Police Department testified on behalf of the Commonwealth. No witnesses testified on behalf of Defendant. Defendant withdrew his motion to suppress evidence at the hearing.

---

[1] 18 Pa.C.S.A. §6105(a)(1).
[2] 18 Pa.C.S.A. §4910(1).
[3] 35 P.S. §780-113(a)(16).
[4] 35 P.S. §780-113(a)(32).

1

## FINDINGS OF FACT

1. On August 10, 2017, Officer Hall was assigned to the street crimes unit and performed a home visit with Officer Leazier at Defendant's residence located at 1007 Penn Street, Apartment 2F, Reading, Berks County, Pennsylvania (hereinafter referred to as "Defendant's Residence").

2. Upon arrival at Defendant's Residence, Officer Hall knocked on the front door but Defendant did not answer. A call was placed by Officer Hall to Defendant's cell phone but, again, Defendant did not answer.

3. As the officers entered their car, Defendant stuck his head out of the second floor window and told the officers to come up. Defendant allowed the officers inside of Defendant's Residence and they went to the second floor where Defendant's bedroom was located. Officer Hall requested to see Defendant's bedroom and Defendant agreed.

4. Upon entering Defendant's bedroom, the officers observed a bullet sitting on a mini refrigerator. Officer Hall testified that this was a violation of Defendant's parole. Officer Leazier observed baggies on the floor that he recognized as items commonly used for packaging cocaine.

5. Officer Hall asked Defendant for permission to search his bedroom. Defendant responded by stating "you are going to do what you are going to do."

6. Officer Hall searched Defendant's bedroom and located a firearm in Defendant's closet that matched the bullet on the mini refrigerator. He also located drug packaging paraphernalia, a plate with white residue and a razor blade with white residue.

7. Officers observed that Defendant was sweating and exhibited nervous behavior. He was also dry heaving.

2

8. Officer Hall asked Defendant where his drugs were located. Defendant admitted that he swallowed the drugs before the officers entered the apartment. Defendant was crying out of fear that he could overdose as a result of the drugs he swallowed. At that point, Defendant was placed in handcuffs and read *Miranda* warnings. Defendant then denied ownership of the firearm. He also stated that he didn't pay anything for the firearm but he had traded for it.

9. Defendant was crying, dry heaving and informed the officers that he was going to vomit. Defendant was escorted to the bathroom and his handcuffs were removed. He dry heaved over the toilet. An ambulance was contacted for Defendant after he informed the officers of the overdose.

10. Defendant was transported to the hospital and underwent an overdose protocol. Officer Leazier accompanied Defendant to the hospital.

## CONCLUSIONS OF LAW

### *Miranda* Warnings

11. "Statements made during custodial interrogation are presumptively involuntary, unless the accused is first advised of her *Miranda* rights." *Commonwealth v. Kunkle*, 79 A.3d 1173, 1179 (Pa. Super. 2013) (citation omitted).

12. "It is the Commonwealth's burden to establish whether a defendant knowingly and voluntarily waived his *Miranda* rights. In order to do so, the Commonwealth must demonstrate that the proper warnings were given, and that the accused manifested an understanding of these warnings." *Commonwealth v. Cohen*, 53 A.3d 882, 885-886 (Pa. Super. 2012) (citation and alteration omitted).

3

13. "In considering whether a defendant has validly waived his *Miranda* rights, the trial court engages in a two-pronged analysis: (1) whether the waiver was voluntary, in the sense that the defendant's choice was not the end result of governmental pressure; and (2) whether the waiver was knowing and intelligent, in the sense that it was made with full comprehension of both the nature of the right being abandoned and the consequence of that choice." *Kunkle*, 79 A.3d at 1180 (alterations and citation omitted).

14. "The test for determining the voluntariness, and thus the admissibility, of an accused's statement is the totality of the circumstances surrounding the statement." *Commonwealth v. Bryant*, 67 A.3d 716, 724 (Pa. 2013) (citation omitted).

15. The following factors "should be considered under a totality of the circumstances test to determine whether a statement was freely and voluntarily made: the duration and means of interrogation, including whether questioning was repeated, prolonged, or accompanied by physical abuse or threats thereof; the length of the accused's detention prior to the confession; whether the accused was advised of his or her constitutional rights; the attitude exhibited by the police during the interrogation; the accused's physical and psychological state, including whether he or she was injured, ill, drugged, or intoxicated; the conditions attendant to the detention, including whether the accused was deprived of food, drink, sleep, or medical attention; the age, education, and intelligence of the accused; the experience of the accused with law enforcement and the criminal justice system; and any other factors which might serve to drain one's powers of resistance to suggestion and coercion." *Id.* (citation omitted).

16. "The question of voluntariness is not whether the defendant would have confessed without interrogation, but whether the interrogation was so manipulative or coercive that

4

it deprived the defendant of his ability to make a free and unconstrained decision to confess." *Commonwealth v. Nester*, 709 A.2d 879, 882 (Pa. 1998) (citation omitted).

17. In the case at bar, Defendant invited the officers into Defendant's Residence and into his bedroom. When the officers encountered Defendant, he was sweating, nervous and dry heaving. Defendant admitted that he had swallowed drugs before the officers had come inside. He was also crying for fear that he might have overdosed. At that point, Defendant was handcuffed and provided with *Miranda* warnings. Defendant does not claim that he was improperly advised of his *Miranda* rights or that he did not waive those rights. Instead, Defendant alleges that he was under such duress that the waiver of his *Miranda* rights was invalid.

18. Upon consideration of the totality of the circumstances, including the above factors, this Court finds that the conditions surrounding the administration of *Miranda* warnings to Defendant were free of governmental manipulation or coercion and Defendant's statements were voluntarily made. The duration of the interrogation was brief and there was no evidence of physical abuse or threats to Defendant. Defendant was not detained prior to the confession. There was no evidence that the police were anything other than respectful and polite to Defendant. In fact, they assisted Defendant to the bathroom when he was feeling sick and Officer Leazier accompanied Defendant to the hospital after the ambulance was called. Defendant was physically sick and his psychological state was one of fear due to his potential overdose. However, Defendant's condition was self-inflicted. Defendant should not be able to benefit from his attempt to conceal narcotics from the officers by now claiming he was under duress as a result of swallowing the drugs he attempted to conceal. Defendant was assisted by the officers as a result of his

5

potential overdose and an ambulance was contacted. There is no indication that Defendant did not understand his *Miranda* warnings or that he was adversely treated. Therefore, Defendant's statements are admissible.

## Corpus Delicti

19. "The *corpus delicti* rule provides that the Commonwealth bears a burden of showing that the charged crime actually occurred before a confession or admission by the accused can be admitted as evidence." *Commonwealth v. Otterson*, 947 A.2d 1239, 1249 (Pa. Super. 2008).

20. "A trial court applies the *corpus delicti* rule in two phases: (1) In the first phase, the court determines whether the Commonwealth has proven the *corpus delicti* of the crimes charged by a preponderance of the evidence. If so, the confession or extrajudicial statement of the defendant is admissible ; (2) In the second phase, the rule requires that the Commonwealth prove the *corpus delicti* to the factfinder's satisfaction beyond a reasonable doubt before the factfinder is permitted to consider the confession or extrajudicial statement in assessing the defendant's innocence or guilt." *Commonwealth v. Bullock*, 170 A.3d 1109, 1118 (Pa. Super. 2017) (citation, quotation marks and alterations omitted).

21. "To establish the offense of tampering with evidence, the Commonwealth must prove three interrelated elements: (1) the defendant knew that an official proceeding or investigation was pending or about to be instituted; (2) the defendant altered, destroyed, concealed, or removed an item; and (3) the defendant did so with the intent to impair the verity or availability of the item to the proceeding or investigation." *Commonwealth v.*

6

*Yasipour*, 957 A.2d 734, 745 (Pa. Super. 2008) (citation and alteration omitted); 18 Pa.C.S.A. §4910(1).

22. In the case at bar, the officers observed a bullet on a mini refrigerator and drug packaging material upon entry into Defendant's bedroom. A search of Defendant's bedroom revealed a firearm, more drug packaging material, and a plate and a razor blade each containing white residue. Defendant was sweating, exhibiting nervous behavior and dry heaving. In response to Officer Hall's question regarding the location of his drugs, Defendant admitted to Officer Hall that he had swallowed drugs before the officers entered the apartment. In the absence of Defendant's statement, there was no independent evidence that Defendant had "altered, destroyed, concealed, or removed" any drugs or that Defendant intended to "impair the verity or availability of the [drugs] to the proceeding or investigation." The officers were unaware that Defendant had swallowed any substances and they had no knowledge of the content of those substances but for Defendant's statement. Therefore, this Court finds that the Commonwealth has failed to prove the *corpus delicti* of Tampering with or Fabricating Physical Evidence by a preponderance of the evidence. Defendant's statement that he swallowed drugs before the officers entered the apartment is inadmissible.

23. In summary, this Court finds that there has been no violation of Defendant's *Miranda* rights and Defendant's statements are admissible except as set forth below. Additionally, this Court finds that the Commonwealth has failed to prove the *corpus delicti* of Tampering with or Fabricating Physical Evidence by a preponderance of the evidence. Defendant's statement that he swallowed drugs before the officers entered his apartment

7

is inadmissible. Therefore, Defendant's Motion must be granted in part and denied in part.

The Court enters the following Order.